KANSAS CITY LAUNDRY SERVICE COMPANY, a Corporation, Appellant, v. C. P. JESERICH and CITY STEAM LAUNDRY COMPANY, a Corporation, Respondents.

In the Kansas City Court of Appeals, January 8, 1923.

1. **APPEAL AND ERROR:** Bill of Exceptions: Rules: On Appeal in Equity Case in Absence to Bring in Documentary Evidence Court

Will Assume Tendency of Evidence to be as Appellee Contended Bill of Exceptions in Court Below Showed ·Under Rule 14, requiring bill of exceptions in equity cases to contain all of the evidence unless an abbreviated statement thereof is agreed upon, in the absence from the abstract of the record, of a classified business list of the telephone directory which had been introduced in evidence, the court will assume the tendency of the evidence to be as appellee contended the bill of exceptions on file in court below showed.

2. **INJUNCTIONS: Trade Secret: Evidence Held to Show that List of Laundry Customers was not a Trade Secret.** In an action by a laundry company to enjoin a former employee from the solicitation of laundry customers of plaintiff, evidence *held* to show that laundry companies in the city generally knew that the alleged customers of plaintiff were concerns well known to the laundry trade, and of the nature of the services required by them, and plaintiff's list of such customers was therefore no trade secret.

3. **INJUNCTION: Unfair Competition: Laundry Employee not Restrained from Soliciting Customers of Former Employer, There Being no Agreement not to Engage in Competitive Business.** An injunction will not lie to restrain a former employee of a laundry company from soliciting its customers, in the absence of an agreement by the former employee not to engage in competitive business so long as he does not make use of the property of his former employer, such as a secret list or secret information gained in a confidential way, and does not use unfair or fraudulent means in so doing

Appeal from the Circuit Court of Jackson County.— *Hon. Thad B. Landon*, Judge.

AFFIRMED.

*McCune, Caldwell & Downing* for appellant.

*Samuel W. Sawyer, John H. Lathrop, E. M. Tipton* and *John C. Grover* for respondent.

BLAND, J.—This is an action to enjoin defendants from the solicitation of laundry customers of plaintiff. A temporary injunction was issued whereupon a motion to dissolve was filed. The case on the merits and the

motion were tried together, resulting in the dissolving of the injunction and the dismissal of plaintiff's bill. Plaintiff has appealed.

In its petition plaintiff alleges that it is engaged in doing a general laundry business in Kansas City, Missouri, owning a plant known as Woolf Bros. Laundry in said city; that this business included the doing of what is known as flat work laundry for hotels and other similar institutions; that part of its business consists in soliciting laundry work from customers which become regular customers; that the defendant Jeserich was an employee of plaintiff and its predecessor for a number of years and solicited flat work at hotels, railroad companies and other institutions in Kansas City, and superintended its flat work business; that plaintiff kept a specially prepared list of the names of flat work customers which was compiled and maintained by the company at large expense; that defendant Jeserich was familiar with such list of such customers and the prices charged and the details of the business transacted by it; that said facts and information constituted a trade secret of great value. It further alleges that when defendant Jeserich left the employment of plaintiff he was employed by defendant, City Steam Laundry Company, at its plant in Kansas City, Missouri, and that "under the terms of said employment defendant was to and did use the trade secrets and information heretofore set out as having been acquired by him while in the employment of this plaintiff, . . . and for the purpose of wrongfully depriving this plaintiff of said property, constituting a trade secret belonging to the plaintiff, and for the purpose of depriving plaintiff of its business, trade and customers, and for the further purpose of securing said trade and customers defendant accepted employment from the City Steam Laundry Company;" that Jeserich used the information that he obtained while in plaintiff's employ and had been soliciting the business of plaintiff's flat work customers for defendant company. Said list containing twenty-eight names is filed. It is

further alleged that by Jeserich's using and divulging said information, constituting the trade secrets of plaintiff, to defendant company, a competitor of plaintiff, it has obtained flat laundry work from various of said customers and was endeavoring to obtain similar work for other of said customers. The bill prays that defendants be enjoined from soliciting through Jeserich or his agents the twenty-eight customer's names and that Jeserich be enjoined from divulging further any trade secrets of plaintiff.

Counsel have not been able to agree as to what are the facts shown in the record. The record is lengthy and the evidence of many points contradicted. An analysis of the testimony of the various witnesses would require an opinion entirely too lengthy. As the learned chancellor observed the demeanor of the witnesses upon the stand and was in a better position than we to judge as to the truth of the testimony, and having found the issues in favor of the defendant and that "the matter and facts as shown by the evidence did not constitute trade secrets and defendants are not and have not been engaged in unfair competition with plaintiff," we shall take the testimony of plaintiff's witnesses largely as true on the principal disputed question, that is, as to whether the information obtained by Jeserich while in the employ of plaintiff and its predecessor constituted trade secrets. There is no great preponderance either way on the disputed evidence that is apparent on the face of the record.

The facts show that Jeserich had been employed by plaintiff and its predecessor for more than twenty years; that on August 28, 1920, he served his connection with the Woolf Bros. Laundry and was employed by one Bloch who operated a laundry in Excelsior Springs, Missouri. Bloch was handling a large amount of flat work in the vicinity of Kansas City for the Pullman Company and had made a contract with the Woolf Bros. Laundry Company to do a part of this business for them. Woolf Bros. Laundry gave up this work, throwing the entire

Pullman contract upon Bloch's laundry in Excelsior Springs and in order to handle the work it became necessary for Bloch to have a Kansas City office with a man in charge for the handling of this business. On said date Bloch employed Jeserich to take charge of his Kansas City office to handle the Pullman flat laundry, collecting and forwarding it to Excelsior Springs and delivering it in a laundred condition in Kansas City. At this time Bloch did not contemplate starting a laundry in Kansas City. An office was rented but before operations began Bloch found that he was able to rent a laundry plant in Kansas City and on the 11th day of October, 1920, he leased the same. On the 5th of November, 1920, he organized the defendant City Steam Laundry Company, Bloch being the principal stockholder and Jeserich president and general manager. The defendant company was organized primarily to take over a part of the Pullman Company's work but also to do a general laundry business.

Shortly after the organization of this company Woolf Bros. Laundry lost five or six of its customers to the defendant company. Defendant company obtained no customer from any of the seven other laundries operated by plaintiff in Kansas City or from any other laundry company in said city. Jeserich testified that he did not solicit these five or six customers of the Woolf Bros. Laundry but that they came to him voluntarily. However, Bloch testified that it was the duty of Jeserich to solicit customers and we may assume for the purpose of this case that Jeserich actually solicited these five or six customers of the Woolf Bros. Laundry. But as to what methods he used in such solicitation, there is no evidence. There is no evidence that Jeserich solicited any other of the twenty-eight concerns mentioned.

The facts further show that Jeserich before he left the employ of Woolf Bros. Laundry had charge of its flat work department and that he had direct charge of the work of the twenty-eight concerns mentioned in the petition. He also had charge of the other flat work cus-

tomers of the Woolf Bros. Laundry but they were solicited and their business personally carried on by various laundry drivers having routes and working under Jeserich.

The twenty-eight flat work customers mentioned in the petition were among those of the Woolf Bros. Laundry known as commercial flat work customers. The term ''commercial'' flat work customers was applied by some of the witnesses to laundry customers in Kansas City who had a large amount of flat work to be done as distinguished from ordinary family or small flat work customers. Jeserich's duties with the Woolf Bros. Laundry were to solicit flat work, the superintendency of said work and the services required by the customers which included the number of collections and delivery per day or week, adjustment of complaints and collection of charges and the time and frequency of payment of bills. In short, he had general supervision and operation of the flat work department.

A list of the flat work customers was kept by the Woolf Bros. Laundry but what was the exact character of this list and the importance attached thereto by plaintiff in connection with its being secret, is not fully shown in the evidence. No list was introduced in evidence and no books or records showing what it was or its character. It would appear that this list was nothing more than what any concern selling services, such as a laundry, would necessarily keep. The evidence fails to show that plaintiff guarded this list as having some great or secret value although it was not open to inspection by the public or plaintiff's competitors nor does it appear that any of plaintiff's business affairs were public property and open to inspection. It does appear without dissent that other ordinary employees of plaintiff had access to this list. The evidence shows that most of the flat work of the city was done by eight laundries owned by plaintiff and by three others, including the defendant company. Plaintiff's laundries did about one-half of the commercial flat work of the city. All of the laundries

which did commercial flat work had solicitors who solicited this work and it would appear that there was considerable rivalry between the companies in getting the commercial flat work of the city.

Of the twenty-eight concerns which plaintiff sought to have defendant enjoined from soliciting, thirteen were hotels, five railroads, two supply companies (apparently laundry supply companies) two firms, one bath house, one Y. M. C. A., one agency, one club, one express company and one land company. Defendant introduced in evidence the classified business list in the telephone directory of Kansas City and in the absence of the bringing here in the abstract of the bill of exceptions the classified list, as required by our rules (Rule 14), we will assume that these twenty-eight concerns publicly advertised their business in the telephone directory and that this list tended to show that the number of commercial flat work customers were few, all, as defendants state, the bill of exceptions on file in the court below shows. It is admitted that it is well known to all laundry companies that hotels and railroads generally have flat work to be done although in some instances such companies do their own work, so it is apparent that a majority of the twenty-eight concerns mentioned in the petition as customers of plaintiff were concerns well known to the laundry trade as having commercial flat work. These concerns were not upon any particular route but were scattered over the city.

There is a dispute in the evidence as to whether the services required by the commercial flat work customers of Kansas City and the prices charged by various laundries doing flat work were not matters well known to all laundries. Defendant introduced testimony tending to show that the solicitors of the various laundry companies had no trouble in interviewing these customers in soliciting their work and in obtaining all the information at hand in reference to the services and prices being charged by the laundry doing the work of the customer at the time. This evidence was denied by plaintiff's wit-

nesses, but one of plaintiff's officers admitted that where a concern was dissatisfied and called in another laundry company to bid upon the work that the customer was free in disclosing the nature of the services being rendered, but testified that it was very difficult to find out the charge that was being made. However, as the court found for defendants, we will assume that it was not a difficult matter for a solicitor of any laundry company to find out from a customer what services were being rendered and the price being paid. In fact, we think the preponderance of the evidence shows that it was known in a general way to laundries doing flat work for these large concerns in the city what was required by them in the way of services.

There is testimony on the part of defendant that the price charged by the various laundries of plaintiff for this character of laundry work was uniform except as to one of such laundries, and this price was generally known to the laundry trade; that the volume of work required by the customer did not affect the price paid, that a small hotel would get the same price as a large one. This testimony is denied by plaintiff's witnesses. One of defendant's witnesses attempted to give the prices charged by plaintiff's laundries to particular commercial flat work customers but one of plaintiff's officers testified that this witness of defendants was mistaken except in one instance. Jeserich's testimony shows that he did not know the prices paid by a number of commercial flat work customers of other laundries nor the details of the services, but he knew in a general way what these were and knew, as all such laundrymen knew, what services were required by this kind of customers. There was no information had by one laundry company that could be used in getting customers and keeping them satisfied that was not known to all laundry companies. There is testimony on the part of plaintiff that since Jeserich left plaintiff's employ Woolf Bros. Laundry had changed the rate for this class of work; that this was not a gen-

eral change but that prices made to some customers had been raised and to others lowered.

There is no evidence of any contract between Jeserich and plaintiff that Jeserich was not to solicit customers after he left plaintiff's employ. The evidence shows that when Jeserich left plaintiff's service he did not do so with the intention of going into a business that would require the solicitation of plaintiff's customers but merely to assist Bloch in handling the Pullman Company's business which Woolf Bros. Laundry had given up.

It would appear that the most that Jeserich was doing was engaging in a competitive business with his former employer and soliciting business of his employer's customers. While he may have used information that he gained while an employee of plaintiff, it does not appear that this information constituted a trade secret. No special knowledge was required of Jeserich to do plaintiff's business save that he had to be proficient in his line of business the same as other men in the same business. There is no law that prevents a man who has been employed by another from afterwards engaging in the same business in competition with his former employer and soliciting the business of such employer's customers, so long as he does not make use of the property of his former employer such as a secret list or secret information gained in a confidential way, and does not use unfair or fraudulent means in so doing. Sachter's Ice Cream Co. v. Sunshine Ice Cream Co., 190 N. Y. S. 391; Boosing v. Dorman, 133 N. Y. S. 910; Scott v. Scott, 174 N. Y. S. 583; Peerless Pattern Co. v. Pictorial Review Co., 132 N. Y. S. 37; Stein v. National Life Association, 32 S. E. 615; 22 Cyc. 844.]

In the case at bar there is no evidence that plaintiff's list of customers contained any information that was not compiled or used by any ordinary laundry company. The fact that it was generally open to other employees shows that it was not a secret list. [Peerless Pattern Co. v. Pictorial Review Co., supra, l. c. 39.] The fact that Jeserich did not make a copy of the list and use the

same in his new employment perhaps would not be material for the reason that he carried the information in his head and this would be equivalent to his retaining a copy of the list. The list was not secret as it was generaly known to the laundry trade who were the commercial flat work customers of the city. These were comparatively few in number, and even if plaintiff's list had been secretly kept, this fact would not be important if it were well known to the laundry trade who those customers were. This list was not like a long list of customers upon a laundry route who were not known generaly to the laundry trade as being in the market for flat work.

Plaintiff cites the case of Stone v. Grasselli Chemical Co., 65 N. Y. Equity 756, in support of the contention that the fact that defendant laundry company could have secured from other sources the information possessed by Jeserich, gained while he was in the employ of plaintiff, would not make Jeserich's information of the kind that plaintiff had no right to have kept secret by injunctive process. That case was where an employee of plaintiff left and went into the employ of a defendant and there divulged a secret process of plaintiff for the manufacture of depilatories. It was held that the fact that defendant might have by experiment gained the information which it had attempted to discover before hiring plaintiff's employee would not prevent the issuance of the injunction. Of course, the methods used by Woolf Bros. Laundry were not to be compared with the use of a secret process in the manufacture of an article. As before stated, Woolf Bros. Laundry had no method of doing business that was not generally known to all laundries. In fact, the services it gave depended more upon the desires and demands of its customers than upon any secret ideas that Woolf Bros. had. The services to be performed were largely those required by the customers and there is no evidence that they were materially different than those that other laundries used in attempting to satisfy their customers. Of course, Woolf Bros. in

their business with cutsomers had control over prices charged and Jeserich knew the price being charged to each customer. This price had been changed to some extent since Jeserich left plaintiff's employ, the extent not being definitely shown in the evidence.

Defendant's evidence tends to show that the matter of price and services being rendered a customer was a matter of common knowledge and was gladly furnished to laundry competitors by a customer on request. We fail to see how Woolf Bros.' method of doing business could be regarded in any sense as a secret method. Even though the defendant laundry company did not know of this method independent of the knowledge of Jeserich, it could hardly be said to be secret if defendant company or other laundry companies could without any particular trouble or by resorting to any unusual or unfair method, obtain all the information by merely calling a customer over the phone or sending a solicitor to obtain it. So, it would appear that all that Jeserich was doing, after he left plaintiff's employ, was to use his experience gained while in plaintiff's employ and his acquaintance that he had with its customers, in soliciting business for defendant company, and that the information that he obtained while in the service of plaintiff and its predecessor was in no wise secret but such as any employee would gain in any line of business. The fact that he was not able to get the business of any of plaintiff's other laundries or in fact any laundry company in the city, would make no difference. He had the right to the use of the friendships and acquaintance that he made while in the employ of plaintiff and its predecessor.

Jeserich was under no contract with plaintiff not to engage in a business requiring the solicitation of plaintiff's customers after he left plaintiff's employ, or not to divulge or use information that he had received while in plaintiff's employ. Of course he was under an implied contract not to divulge trade secrets of plaintiff but, as before stated, plaintiff had no such secrets. He

did not quit plaintiff's employ for the purpose of divulging information to the defendant company or to other persons or for the purpose of using information that he had obtained while so employed for his own benefit, or that of defendant company. He did not misrepresent any facts in soliciting plaintiff's laundry customers, and did not use any unfair or improper methods of obtaining business. Under such circumstances it is clear that plaintiff made out no case for equitable interference.

We have carefully examined plaintiff's authorities and while we find them correct in principle they are founded upon facts wholly different from those in the case at bar.

The judgment is affirmed. All concur.