COLONIAL LAUNDRIES, INC. *vs.* JOHN J. HENRY *et al.*

JUNE 23, 1927.

PRESENT:   Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)  Equity.   Unfair Competition.*

When a selected list of customers has been built up by labor and expense on the part of an employer and is secretly imparted to an employee for a specific purpose, it is not a part of the employee's general knowledge which may be freely used any where.

*(2)  Employer and Employee.   Confidential Information.*

Knowledge of the names of an employer's customers furnished to an employee at the time his employment began is confidential information.   Subsequent additions to the list create no change in this respect.

*(3)  Equity.   Unfair Solicitation.*

The jurisdiction of equity to restrain the use of knowledge of the names of customers of a business concern, obtained by an employee while engaged in the business of such concern, is based upon the misuse of something of value belonging to the employer, namely, the good will of his customers and such good will is sufficiently in the nature of property to be entitled to protection against unfair *solicitation*.

*(4)   Equity.   Unfair Solicitation.*

If, an employer is entitled to protection against unfair solicitation by an employee, it is immaterial whether the employee makes use of a written list of customers, or depends upon his memory.

*(5)   Equity.   Unfair Solicitation.*

The use by a former employee of a specific list of customers, written or unwritten, made known to the employee only by reason of express communication from the employer for the purpose of his business exclusively, may not be made the basis for competitive solicitation of business from those specific customers.   In taking such action equity does not interfere with the employee's right to do business with those customers but it forbids initiation of that business by the use of information given the employee in confidence.

STEARNS and SWEENEY JJ., dissenting.

BILL IN EQUITY.   Heard on appeal of respondents and appeal dismissed.

BARROWS, J.   This case is heard on appeal from a decree granting a preliminary injunction restraining respondents from soliciting laundry business from certain people from whom respondents as drivers for complainant had collected laundry.

It is agreed that for several years the respondents were employed at will by complainant or its predecessors as drivers of laundry wagons; that upon entering into employment they were given the names of certain regular customers upon whom to make periodical calls for the solicitation and collection of laundry to be done by complainant; that such customers constituted what is called a route and the number of customers on the routes increased during respondents' employment; that in May, 1927, both respondents voluntarily left complainant's employ; that during the last week of their employment they notified complainant's customers that respondents were about to go into the laundry business for themselves and received assurance that the customers would be willing to give them their laundry work; that in the following week they called upon and received from eighty per cent of the customers on their respective routes bundles of laundry which they took to respondents' new business; that the respondents copied no

list of customers but simply carried the names and addresses of said customers in their memories; that respondents' contracts with complainant did not forbid the former from engaging in a competitive business.

The Superior Court, conceding that it hitherto had refused to enjoin such conduct, recognized "the growing tendency in courts to grant equitable relief under such circumstances," and expressing its own feeling "that perhaps respondents should not under such circumstances be allowed to take advantage of the knowledge they had gained in confidential relationship," granted the injunction.

Respondents admit that if there had been an express contract not to compete after termination of the employment an injunction would have been proper. *Witkop & Holmes Co.* v. *Boyce,* 112 N. Y. Supp. 874, affirmed in 115 N. Y. Supp. 1150. Equitable jurisdiction, however, does not depend on such an express contract. *Stevens* v. *Stiles,* 29 R. I. 399; *Empire Steam Laundry Co.* v. *Lozier,* 165 Cal. 95, and see note in 44 L. R. A. (N. S.) 1159. Specific performance of a contract in its true sense is not sought. Prevention of unfair competition is the reason for seeking equitable interference. Authorities generally agree that an employee lawfully entering upon a competing business may be enjoined from the use of trade secrets or processes, knowledge of the employer's business surreptitiously obtained or copied lists of customers or information about them. *Stevens* v. *Stiles,* 29 R. I. 399. The wrong prevented is variously stated, viz., violation of complainant's property rights, or misuse of confidential information given by principal to agent, or violation of a contract implied in law. In the latter some courts import a term into the employee's contract of service that "he will not after the service is determined use information which he has gained while the service has been subsisting to the detriment of his former employer." *Essex Trust Co.* v. *Enright,* 214 Mass. 507, at 511. The two latter grounds are in substance only an application of equitable doctrines to prevent fraud or overreaching.

The cases concerning lists of customers have been anno-tated in 23 A. L. R. 423 and 34 A. L. R. 399. They are not in accord but careful examination discloses that the differ-ence among the decisions is not so much one of principle as whether in a given case the list was confidential and if so whether the fact should be submerged in the interests of free competition. Cf. *Fulton Laundry Co.* v. *Johnson,* 140 .Md. 359; *K. C. Laundry Service Co.* v. *Jeserich,* 213 Mo. .App. 71. Says Nims on Unfair Competition (2d ed.) § 151, p. 311: "For an employee to quit the employment and then use in the service of a rival information of a con-fidential nature gained in the prior employment is contrary to good faith and fair dealing." Our court in *Stevens* v. .*Stiles, supra,* is committed to this view. The court, there-fore, must determine, first, whether the knowledge or in-formation, the use of which complainant seeks to enjoin is confidential and, second, whether if it be confidential in whole or in part its use ought to be prevented.

While the relation of employer and employee is a con-fidential one, *Stevens* v. *Stiles, supra,* all knowledge acquired by the employee is not of a confidential nature. Some clearly is of so general a nature that equity ought not to attempt to restrict its subsequent use. At page 318, Nim says that a former employee "is not entitled to avail himself of his acquaintance with the customers to canvass their trade for a new employer. This rule should be applied with caution. Much depends on the special facts of the case. . . ."

If information be imparted privately the character of the secret is immaterial if it is one important to the business of the employer and one to which the employment relates. That a list of customers who wish the drivers to call for laundry is of special importance to the employer is hardly open to dispute. When a selected list has been built up by labor and expense on the part of the employer and is secretly imparted to a specific employee for a specific pur-pose it is not a part of the employee's general knowledge

which may be freely used anywhere. It is as confidential as would be a formula showing how to mix certain ingredients to produce an article of commerce made only by the employer. Just where to draw the line between usable and nonusable knowledge is a matter of difficulty. There is always the question whether encouragement of individual initiative and competition should outweigh whatever unfairness seems to be involved in the use of the information.

The right to engage in any legitimate business is in the nature of a property right. *Dent* v. *W. Va.*, 129 U. S. 114. Those who support the right of an employee to use knowledge like the present do not defend its use as entirely fair. They describe respondents' conduct, as did Lord Kenyon, as "not handsome" but yet not contrary to law. *Nichols* v. *Martyn*, 2 Esp. 732. They assert that the use of such a list is one of the chances taken by the employer if he does not protect himself by contract forbidding the employee to compete. Some justify its use by assertion that the information can not be confidential because it may be secured by any one who cares to follow a driver around his route and observe his places of call. *Fulton Laundry Co.* v. *Johnson, supra.* Some say that the route has no property value; that it is only a part of the general public good will for which any one may strive, *K. C. Laundry Service Co.* v. *Jeserich, supra.* Some hold that a *written* list of customers may have property value entitled to protection but that mere knowledge of the names can not have such property value. *Garst* v. *Scott*, 114 Kan. 676, sc. 34 A. L. R. 395; *Federal Laundry* v. *Zimmerman*, 187 N. W. 335 (Mich.) following *Grand Union Tea Co.* v. *Dodds*, 164 Mich. 50.

(2)     In our opinion knowledge of the names of complainant's customers furnished to respondents at the time the employment began was confidential information. Both counsel concede that subsequent additions to the list created no change in this respect. The *Witkop* case, at page 878, says: "The names of customers of a business concern whose trade and patronage have been secured by years of business effort

and advertising and the expenditure of time and money, constituting a part of the good will of a business which (3) enterprise and foresight have built up should be deemed just as sacred and entitled to the same protection as the secret of compounding some article of manufacture and commerce." Knowledge of these names is not tangible property but neither is knowledge of a secret formula. The jurisdiction of equity to restrain the use of such knowledge is based upon the misuse of something of value belonging to the employer, namely, the good will of his customers. Such good will is sufficiently in the nature of property to be entitled to protection against unfair *solicitation*. *Zanturjian* v. *Boornazian*, 25 R. I. 151; *Ferris* v. *Pett*, 42 R. I. 48; *Von Bremen* v. *MacMonnies*, 200 N. Y. 41 (1910); *Trego* v. *Hunt*, 1896 App. Cas. H. of L. 7; *Peabody* v. *Norfolk*, 98 Mass. 452. Knowledge of the list enabled the drivers to ingratiate themselves with a specific group of people gathered into a single unit by the employer. The knowledge came to respondents only from complainant and for its purposes. It was none the less confidential because an energetic spy might have acquired the same information, although in passing it may be noted that the opportunities of the spy to ingratiate himself with the trade are not those of the drivers. Without this knowledge respondents' solicitation must have been of a general nature such as might be addressed to anyone in the community. With it they possessed a distinct advantage not in general competition with all laundries but for the purpose of specific injurious competition with complainant. The time and expense spent by complainant in gathering these groups of customers was capitalized by respondents to save making the otherwise required general canvass for customers. Knowledge of the route enabled respondents to compete not only by the offer of equal or superior services and on equal terms but to take advantage of the money and labor spent by complainant to group selected people on a particular route. Respondents admit that if they had taken a written

list of customers when they quit, or had surreptitiously procured the names, the injunction would be proper. *Stevens* v. *Stiles, supra.* Like the courts in *French Brothers-Bauer Co.* v. *Townsend Brothers Milk Co.*, 152 N. E. 675 (Ohio) (1925) (milk route), and *Davis & Co.* v. *Miller*, 104 Wash. 444 (real estate); *People's Coke etc.* v. *Light*, 157 N. Y. Supp. 15 (towel supply). We fail to see why complainant is entitled to less protection when the names on the list are carried off in the employees' memories. So, too, may secret formulas be carried away. *K. C. Laundry Co.* v. *Jeserich*, 213 Mo. App. 71, denying an injunction, says, at p. 80, that no logical distinction warrants the use of a list memorized when a written list could not be used.

(4)

We freely concede the desirability of encouraging individual business enterprise and initiative. That which by experience has become a part of a man's general knowledge can not and ought not to be interfered with, but conceptions of legitimate business competition are steadily rising and when a course of conduct is adopted which at best is "not handsome" and shocks one's sense of fair play, we see no good reason to allow secret information conveyed for a specific purpose to be converted into a weapon of attack on the employer only. This is neither general nor fair competition.

There is a distinction between the present and cases of traveling salesmen selling to the trade; their custom is sought from any persons who are engaged in certain lines of business and whose identity may be quickly known to any one who cares to examine a directory or trade index. In cases involving milk, ice, laundry, and tea routes, a list of customers can not be thus obtained; a definite selected group has been gathered together by the employer, not of persons who may deal with him but who, if not specially solicited otherwise, almost certainly will do so. In trade, generally, the traveling salesman has no assurance of an order unless he can satisfy the customer that his merchandise is cheaper, better, or more salable than his competitors. The customer each time desires to examine, inspect and

compare merchandise and prices offered to him. Each sale is a distinct transaction carrying no implication that another will follow. The list of people upon whom he calls has no market value apart from a general good opinion of the employer's methods and goods and prices. A particular laundry route has a definite market sale value. The given customers pay little attention to whose services they receive. The quality of the service rendered is so similar that the customer invites the person rendering the service to call at definite periods and to keep on rendering such service until further notice. There is a business relationship between the customer and the laundry which, unless interfered with, normally will continue.

At the time when these respondents announced their intentions to enter into business for themselves they were employed by complainant. While so employed, if they had secured the customers' promises of their future business there could be little doubt that they would be taking an unfair advantage of their employer. Is it any less unfair to solicit the customers for respondents on Monday of the week they started business than it would be on the previous Saturday, while employed by complainant? It is no answer to say that on Monday no contractual relationship exists whereas such relationship did exist on Saturday. It is not the breach of express contractual relations which equity is attempting to stop; it is a breach of trust often referred to as a contract implied in law which strictly is no contract at all, though remedied by action contractual in form, *Wartell* v. *Novograd*, 48 R. I. 296 (filed June 6, 1927). It is the misuse of special confidential knowledge secured while the contractual relation existed. That the employer can protect himself by special contract operating after the employment terminates does not render the use of the knowledge less an abuse of confidence. In the opinion of the majority the use by a former employee of a specific list of laundry customers, written or unwritten, made known to the employee only by reason of express communication

from the employer for the purpose of his business exclusively may not be made the basis for competitive solicitation of business from those specific customers.

In taking such action equity does not interfere with respondents' right to do business with these customers but it forbids initiation of that business by the use of information given the employee in confidence. The terms of the injunction do not enjoin the respondents from dealing with any who were their customers. Acceptance of patronage of all who voluntarily decide to employ them is not interfered with; only solicitation for packages of laundry is forbidden; respondents are denied the right to use in soliciting business knowledge confidentially imparted to them by complainant, that at certain times persons will probably have laundry to be cared for. Respondents may advertise or take any means of publicity to call attention to their business so long as they do not specifically solicit the trade of those upon their former routes. Among the cases adopting the view we have taken, in addition to those heretofore referred to, are *Cornish* v. *Dickey*, 172 Cal. 120; *New Method Laundry* v. *McCann*, 174 Cal. 26. Cf. *San Francisco Laundry* v. *Ragon*, 227 Pac. 686 (Cal.) (1924), where the court refused to enjoin the acceptance of business from customers voluntarily giving their trade to respondent. Also *Kan. City Laundry Service Co.* v. *Jeserich*, 213 Mo. App. 71 (1923), where the twenty-eight customers were not on a *particular route*, but were of a certain type easily ascertainable by examination of the directory and known generally to all laundries. *Davis* v. *Miller*, 104 Wash. 444. Cf. *Sherman* v. *Pfefferkorn*, 241 Mass. 468 and *Eureka Laundry Co.* v. *Long*, 35 L. R. A. (N. S.) 119 (Wisc.).

The appeal is dismissed and the cause is remanded to the Superior Court for further proceedings.

Justices STEARNS and SWEENEY dissent.

*Littlefield, Otis & Knowles, James B. Littlefield,* for complainant.

*Hogan & Hogan,* for respondents.