## CHARLES A. MANEY
vs.
## LOUIS MENDELSOHN, ET AL.

Superior Court      Fairfield County      File #56578

See *Maney vs. Mendelsohn, post,* p. 481.

MEMORANDUM FILED OCTOBER 13, 1938.

Alprovis & Alprovis, of New Haven, for the Plaintiff.

Bartlett, Keeler & Cohn, of Bridgeport, for the Defendants.

QUINLAN, J. Among the facts in this case it appears that the defendant, Louis Mendelsohn, had been an officer and director of Edwards Overall and Cleaning Company. This company went bankrupt and all of its assets were sold to the plaintiff. In the assets were included all the routes, customers and good will.

After the purchase Mendelsohn was employed by the plaintiff. I do not find that he was discharged but that he left the plaintiff's employ. It is true that among the documents and papers of the bankrupt there was no list of customers and Mendelsohn furnished a list. After he left plaintiff's employment he solicited some of these customers. He was not under any written contract of employment with the plaintiff. The injunction is asked on the equitable grounds that he possesses confidential information which he was misusing, and that within the law relating to unfair competition, he should be restrained. While the amount of business actually gained has been slight, the continuance of the solicitation could prove irreparably damaging, as this is a business which

depends for its patronage upon the calling at customers' places of business. "That a list of customers who wish the drivers to call for laundry is of special importance to the employer is hardly open to dispute." *Colonial Laundries, Inc. vs. Henry,* 48 R.I. 332, 335, 138 Atl. 47, 48.

Individual initiative and competition far from being discouraged, should be encouraged. The law does not require, however, that an employer need protect himself by contract in a case of this kind.

As has been indicated, the list, although purchased by the plaintiff from the bankrupt estate, was actually furnished by the defendant, Mendelsohn. He and his family had, however, been negotiating for a sale to the plaintiff before the bankruptcy. Something which was purchased to the advantage of Mendelsohn's creditors ought to carry with it at least a moral obligation to refrain from interfering with the benefits which it carried. The plaintiff having paid for the business, including the lists, is in the same position as if business effort and advertising had built up this protection as a secret formula. The nature of the business and the method of collecting the laundry did not make it as open a proposition as many businesses do, as was well said in *Colonial Laundries, Inc. vs. Henry,* 48 R.I. 332, 338, 138 Atl. 47, 49: "There is a distinction between the present and cases of traveling salesmen selling to the trade; their custom is sought from any persons who are engaged in certain lines of business and whose identity may be quickly known to any one who cares to examine a directory or trade index. In cases involving milk, ice, laundry, and tea routes, a list of customers cannot be thus obtained; a definite selected group has been gathered together by the employer, not of persons who may deal with him but who, if not specially solicited otherwise, almost certainly will do so. In trade, generally, the traveling salesman has no assurance of an order unless he can satisfy the customer that his merchandise is cheaper, better or more saleable than his competitors. The customer each time desires to examine, inspect and compare merchandise and prices offered to him. Each sale is a distinct transaction carrying no implication that another will follow. The list of people upon whom he calls has no market value apart from a general good opinion of the employer's methods and goods and prices. A particular laundry route has a definite market sale value. The given customers pay little attention to whose services they receive. The

quality of the service rendered is so similar that the customer invites the person rendering the service to call at definite periods and to keep on rendering such service until further notice. There is a business relationship between the customer and the laundry which, unless interfered with, normally will continue."

As above indicated, it is not the breach of an express contract, but the breach of a trust, which might be referred to as a contract implied in law, and the relief sought by the application for temporary injunction should be granted until further order of the Court.