84 So.2d 51 (1955)
PURE FOODS, Inc., et al., Appellants,
v.
SIR SIRLOIN, Inc., Appellee.
Supreme Court of Florida. Special Division B.
December 2, 1955.
Rehearing Denied January 13, 1956.
*52 Joe Creel, Miami, for appellants.
Burton Young, Marshall H. Ader, Miami Beach, and Leonard Pepper, Tallahassee, for appellee.
THOMAS, Justice.
This case was here on an appeal from a decree of the chancellor dismissing the bill of complaint and we held that the facts alleged warranted consideration of the merits of the dispute so we reversed the decree with directions to hear testimony relevant to issues that might be formed by appropriate pleadings and to "enter a final decree in accordance with law in the light of his findings of facts." Sir Sirloin, Inc., v. Pure Foods, Inc., Fla., 66 So.2d 593.
The chancellor did as directed and it is on an appeal from his eventual decree that we again study the litigation. We go to the first record, used in the present appeal by order of this court, to get the averments the appellee represented that it could prove, and which proved, should entitle it to relief.
The appellee is a corporation engaged in preparing and selling frozen and fresh meat, called in the bill "specialty products." Immediately it entered the business, it began through its agents to compile a list of customers, a list that lengthened with the passage of time. All employees were cautioned not to disclose the names of customers appearing on the roll.
The appellee, according to the bill, also acquired many "trade names," and "trade secrets" which were revealed only to trusted employees and were used in the preparation of products that became widely known as "Steakies," "Chuck Wagon Steaks," "Sir Sirloin Juniors," "Sir Sirloin Seniors," and so on. In processing these articles, secret batters and mixtures were used and these, too, were disclosed only to trusted employees.
Among appellee's confidants were George Kirby, George Dennis and David Rowan, salesmen, and Jessie Smith, its office manager.
The appellee charged that Rowan started a campaign to persuade other employees to leave appellee's service and work for the appellant, Pure Foods, Inc., and that he was successful in inducing Kirby, Dennis and Smith to do that. Smith then began to win customers from appellee and persuade them to trade with the competitor, Pure Foods, Inc.
As soon as Rowan entered the service of the appellant corporation, the corporation began marketing products similar to those of appellee under the trade names "Beef Fillets," "Sirloin Steaks," and the like.
The appellant-corporation could not process its goods, charged the appellee, had it not taken advantage of the secrets conveyed to it by appellee's former employees, and could not have learned of appellee's list of customers had the list not been given it by them.
*53 Such duplicity, averred the appellee, developed unfair competition that brought it irreparable injury.
All the individual defendants became owners of an interest in Pure Foods, Inc., when they left the employ of Sir Sirloin, Inc., but all except Jessie Smith have since disposed of their interest so she is the only one now a party to this appeal.
After the chancellor considered the testimony, he decreed that the appellant had completely failed to show sufficient damage to justify a monetary award. He decided that the methods and products of appellant had been so extensively imitated and used in the area by other firms that an injunction would serve no purpose, but he did undertake to relieve the appellee from "future unfair competition" by restraining the appellant-corporation from "[c]opying any packages * * * [a]ppropriating any trade lists * * * [and] [e]mploying any meat processing secrets used by the Plaintiff [appellee]." Following this language appears this qualifying sentence: "This does not mean that the corporate [defendant] may not continue in its present business nor employ its present merchandising processing or packaging methods."
Costs in an amount approximating $1,000 were taxed against the original defendants and the placing of this burden on the appellant seems to be the appellant's main complaint here.
The decree of the chancellor follows almost verbatim the recommendations of the special master which were upheld after exceptions were filed by all parties. The only substantial difference was the chancellor's rejection of the master's proposal that a nominal judgment for one dollar be entered against the appellants.
As we analyze the decree, the salient parts of which we have quoted, we come to the conclusion that its terms neutralize one another and that in effect the appellee was denied all the relief it was seeking. If the methods and products of the appellee were so extensively used that an injunction would be feckless, and if the present operation of appellant's business and its use of present merchandising, processing and packaging methods should not be disturbed, it seems to us the appellants were actually exonerated from all charges of wrongdoing, although by his approval of the special master's report the chancellor seems to have accepted the statement that appellants had indulged in unfair competition. This "unfair competition" had been defined by the master as the imitation of packaging and processing secrets and the appropriation of lists of customers, in the language we have quoted from the decree. But the recommendation and the part of the decree adopting it appear counteracted by the provision that the appellant could continue its then course of doing business. This being our view we conclude, on this point, that when the appellee brought the appellants into court and failed to prevail both in a quest for damages and for injunctive relief, except from improper trade practices in which the appellants might indulge in the future, the appellee and not the appellants should pay the cost of the failure.
We now proceed, at the instance of the appellee on the cross assignments, to determine whether the chancellor was correct in his deductions from the testimony that appellee was not entitled to more relief than was granted.
We are not aware of any evidence that any list of customers was taken physically by the departing employees, and although we understand that according to some authorities, Colonial Laundries, Inc. v. Henry, 48 R.I. 332, 138 A. 47, 54 A.L.R. 343, one may not divulge a trade list simply because it is not carried away in writing, but mentally, there is authority to the contrary, El Dorado Laundry Co. v. Ford, 174 Ark. 104, 294 S.W. 393. But we do not think the circumstances of this case justify further exploration of the law on that subject or a condemnation of appellee's erstwhile employees because they undertook to sell to customers whom they had come to know during their former employment. Both corporations were wholesalers and their products were sold to retailers of *54 food such as restaurants and `drive-ins.' Certainly the names of such concerns were easily obtainable from classified telephone directories and like sources, and surely the employees of appellee who became owners of an interest in the appellant-corporation could not be precluded from attempting to sell all customers whom they had known in their former positions. Newark Cleaning & Dye Works v. Gross, 97 N.J. Eq. 406, 128 A. 789.
No questions of a contract not to compete, or of trade-marks, copyrights, fraud or misrepresentation have been established in this litigation.
So much for the trade list.
The matter of trade secrets, relating to preparation of meats, as it was set out in the bill appeared to have some importance, enough, we thought when we considered the pleading in the former appeal, to withstand a motion to dismiss. But now that testimony has been taken, we find that sustaining proof is lacking. It is true that the general character of the products of Pure Foods, Inc., and Sir Sirloin, Inc., was the same, but as the chancellor observed, the products are so widely in use "that any injunctive relief [on that score] * * * would be of no avail." And the similarity of two packages containing a given amount of meat would not of itself raise a suspicion even that the new user was encroaching on the rights of the old.
The trade names adopted by Pure Foods, Inc., bore no resemblance to the ones being used by Sir Sirloin, Inc. According to one of appellee's own witnesses, any imitation of the trade name of Sir Sirloin, Inc., was studiously avoided and the words "Bunk House" were selected by the appellant-corporation as a brand for its goods. We think the facts here are such as to give appellee no comfort from our decision in Sentco, Inc., v. McCulloh, Fla., 68 So.2d 577. The appearance of the packages produced by appellant, as they were described by witnesses, would not support the charge of unfairness by imitation of any features of appellee's products so that a customer would be lead to buy a package produced by appellant thinking he was getting one produced by the appellee, a situation that was discussed by the Circuit Court of Appeals in Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, which we cited in Sentco, Inc., v. McCulloh, supra.
We open the package and examine the contents. The meats were `tenderized,' dipped in batter, and wrapped. The machines used to pierce the meat and make it tender were purchasable in the open market. The enzymes applied to the meats for the same purpose were also available commercially. So there seems to have been no secrets in this respect that could have been taken from the appellee. Although the ingredients of the batter used by the appellee were known to its employees, who were made defendants in the suit, there was no showing that these employees were familiar with the proportions in which the ingredients were used. Moreover the uncontradicted testimony established the fact that, during the time relevant to this controversy, batter obtainable on the market was used by the appellant, except during two short periods when batter mixed by a person who is a stranger to this litigation was used.
We conclude that inasmuch as the decree, in effect, denies relief to the appellee, and seems only to be effective to prevent anticipated transgressions by the appellants, the cause should be dismissed, and that all costs should be assessed against the appellee.
Reversed.
DREW, C.J., and HOBSON and THORNAL, JJ., concur.