**RENPAK, Inc. v. OPPENHEIMER, et al.**

Circuit Court, Palm Beach County.

February 27, 1957.

H. Irvin Levy, West Palm Beach, for plaintiff.

Burnett Roth, Miami Beach, for defendants.

JAMES R. KNOTT, Circuit Judge.

This cause is before the court upon motion of the defendants to dismiss the complaint for failure to state a cause of action.

Plaintiff corporation, a wholesaler of hotel supplies and variety store merchandise, was formed in 1952, and has its principal place of business in West Palm Beach. Its sales merchandise is obtained principally from Libbey Glass Co. and Buffalo Pottery Co. The defendant Oppenheimer served as an officer, director, stockholder and a managing employee of the corporation. Prior to March 2, 1956, according to the complaint, Oppenheimer, privately and without the knowledge of the plaintiff corporation, agreed with the defendant Alson, a salesman for the plaintiff having for his customers many business firms in the Miami area, and with the defendant Feingold, to set up a business concern in competition with the plaintiff, and obtained from the two manufacturers mentioned a distributorship of merchandise similar to that distributed by the plaintiff. On March 2, 1956, defendant Oppenheimer sold his stock to the other stockholders of the plaintiff corporation and thereafter resigned as an officer and director. Subsequently, on March 10, 1956, Oppenheimer quit his employment with the plaintiff, the latter still having no knowledge that he intended to engage in a competing business. Just prior to that time, Oppenheimer had assisted in plans of the plaintiff for the renting and construction of additional space and facilities and the purchase of large quantities of merchandise.

The gravamen of the complaint lies in the charge that defendant Oppenheimer, "while in a fiduciary relationship with the plaintiff was acting against the plaintiff's interests, and, in fact, was using plaintiff's assets, books of account and business know-how for the purpose of joining with others in the formation of a competing business which he knew would seriously damage the plaintiff." Plaintiff claims damages and seeks an injunction against defendants, enjoining them from operating a business in competition with the plaintiff and from distributing the products of the two manufacturers in question.

The court has carefully examined the authorities cited by counsel and from them it is apparent that in practically all cases where injunctive relief was granted, the facts showed one or more elements not present in the case here under consideration. Thus, it is commonly recognized that an officer of a corporation occupies a fiduci-

ary capacity which prohibits him from engaging secretly in a competitive business damaging to his employer. But such is not the case here, since the defendants did not commence to operate their new business until after the severance of their relationship with the plaintiff, although plans for doing so were made prior to the termination of the relationship. Other elements which might compel or justify injunctive relief, present in many of the cases cited, are absent here. It does not appear from the complaint that Oppenheimer or Alson had entered into an agreement with the plaintiff not to engage in a competing business, or that any trade secrets were obtained and unlawfully or fraudulently used by them. Nor does the complaint charge conspiracy for malicious, wanton and unlawful interference with the business of the plaintiff, resulting in a refusal of customers to deal with the plaintiff, as in the case of Hunter Lyon, Inc. v. Walker, 11 So. 2d 176. The Florida Supreme Court there held that if it is shown that the conduct of the defendants was an incident to the accomplishment of a legitimate purpose, amounting to nothing more than lawful competition, a cause of action is not established.

The complaint alleges that defendant Oppenheimer obtained from plaintiff's suppliers a distributorship of "the same type merchandise distributed by the plaintiff corporation," but it is not shown that plaintiff's customers were lured away by the defendants, through unfair competition involving pilferage of customer lists, improper use of knowledge of the identity of plaintiff's customers, or otherwise. See Pure Foods, Inc. v. Sir Sirloin, Inc. (Fla.), 84 So. 2d 51. Nor is it alleged that plaintiff corporation had an exclusive franchise for distributing the products of the two manufacturers, which was violated when defendants obtained a distributorship in the Miami area.

In Simms v. Burnette (Fla.), 46 So. 90, the defendant had left the services of the plaintiff, in violation of a contract not to enter a similar business with another firm in Florida, and according to the complaint, "was about to engage in the liquor business in Jacksonville, in partnership with another former employee, in competition with the plaintiff, with intent to use the knowledge and experience so gained to the detriment and hurt of the latter." It was further alleged that defendant had secretly made copies from plaintiff's books of the principal liquor supply firms from which plaintiff bought supplies, and had copied the names and addresses of plaintiff's customers. The court observed that "the bill alleges nothing more than that universal knowledge, gained by every successful business of long standing, as to where and what it is best to buy and where best to sell. * * * The secret copying from the books

of the names of the dealers and of the prices and the names of the complainant's customers is an allegation tending to show bad faith; but no authority has been cited to us, nor have we found any adjudicated case holding that this fact alone would authorize an injunction against the one committing such breach of faith entering into business at all."

Plaintiff alleges, as noted above, that just prior to the time defendant Oppenheimer left the employment of plaintiff, he "helped in the formulation and commitments to plans of the plaintiff in the renting of additional warehouse space, the purchase of large quantities of merchandise and the obtaining from the landlord of the plaintiff of an agreement for construction of additional premises to be leased by the plaintiff." If such allegation is intended to imply that Oppenheimer thereby betrayed his fiduciary relationship and deliberately, fraudulently and maliciously used his position with the plaintiff as a means of leading the latter into unsafe, unwise and unjustified financial ventures, to plaintiff's damage, an action at law for damages might well lie against him, although the allegations as presently framed do not sufficiently set forth such facts. It might be observed, however, that a remedy of this defect by amendment would not be of material aid in establishing a basis for the injunction sought in the present case.

It is the conclusion of the court that plaintiff is not entitled to injunctive relief under the complaint as presently framed, it appearing that any remedies available under the circumstances must be confined to the common law side of the court.

Defendants' motion to dismiss the complaint is therefore granted. Plaintiff is allowed 10 days after service of copy of this order within which to file an amended complaint, and in default of the same being filed, the cause shall stand dismissed.