104 So.2d 642 (1958)
RENPAK, INC., a Florida corporation, Appellant,
v.
Herbert OPPENHEIMER, Albert Alson, Moe Feingold and Wares, Inc., a Florida Corporation, Appellees.
No. 63.
District Court of Appeal of Florida. Second District.
August 1, 1958.
*643 H. Irwin Levy, West Palm Beach, for appellant.
Burnett Roth, Miami Beach, for appellees.
KANNER, Chief Judge.
Appellant filed suit in chancery seeking injunctive relief against appellees. It was the ruling of the chancellor, in dismissing the amended complaint on motion of appellees, that the appellant was not entitled to injunctive relief under the allegations as framed. This appeal has emerged from that order.
The amended complaint, with the parties referred to in the manner in which they were designated in the court below, is here summarized.
The plaintiff is a corporation with its principal place of business in the City of West Palm Beach, Florida. The nature of the business is that of wholesaler of hotel supplies and variety stores merchandise The corporation employs salesmen who travel throughout the state selling merchandise wholesaled by the plaintiff.
The defendant, Oppenheimer, was an organizer and an officer, director, stockholder, and managing employee of the plaintiff corporation up to March 2, 1956. The defendant, Alson, was a salesman for plaintiff in the greater Miami area.
The complaint sets forth that defendants Oppenheimer, Alson, and Feingold entered into an agreement and conspired to form a competing business known as Wares, Inc., for the purpose of taking over the business of the plaintiff corporation. Oppenheimer did not disclose to the plaintiff the plans that had been agreed upon by himself and defendants Alson and Feingold to establish a competing business, but continued his employment with plaintiff until March 10, 1956. Oppenheimer was acting in a fiduciary capacity and all the defendants knew this, the complaint continues. Further, it is set forth the defendant Oppenheimer had obtained the names of plaintiff's customers over the state during the time he was associated with plaintiff; while the defendant Alson, who had served as salesman for plaintiff in the Miami area, called upon plaintiff's customers in that section and was successful in taking some of these customers to the new business.
The complaint further states that the defendant, Oppenheimer, arranged for the *644 new company to handle the Libbey Glass Company and the Buffalo Pottery Company products, when theretofore plaintiff had been their sole distributor; that these negotiations took place over a period of several months, as did the planning between the defendants Oppenheimer and Alson to abandon their connections with the plaintiff corporation and set up a competing business. It is also complained that the defendant, Oppenheimer, assisted with and participated in plaintiff's procurement of a lease for warehouse expansion in West Palm Beach; that he helped plan business expansion throughout the state for the plaintiff corporation; that plaintiff was later forced to lease warehouse space in Miami in order to combat the competition set up by defendants in this area where the greater portion of plaintiff's sales had been made.
The complaint concludes before the prayer with allegations that as a result of the scheme of defendants, plaintiff has lost many valuable customers and much good will.
The prayer is that plaintiff be awarded damages; that defendants be enjoined from engaging in business competition with the plaintiff and from soliciting business from plaintiff's customers; that a trust be impressed upon all the profits realized by defendants; and that the defendants be enjoined for a reasonable time from entering into a business wherein there is the wholesale distributorship of Libbey Glass Company and Buffalo Pottery Company products.
It is a recognized and accepted principle that an officer of a corporation occupies a fiduciary or quasi-fiduciary relation to the organization, requiring loyalty and good faith on his part; and he cannot assume positions contrary to the interests of the corporation. Managing officers partake of the nature and have duties like those of a trustee or quasi-trustee. In this sense, they are rigidly accountable for any breaches of trust. A mere employee of a corporation ordinarily does not occupy a position of trust unless he also serves as its agent. 19 C.J.S. Corporations § 761 b, pp. 107, 108; 13 Am.Jur., Corporations, section 997, pp. 948, 949; and Le Mire v. Galloway, 1937, 130 Fla. 101, 177 So. 283. In general it is held, however, that corporate officers or directors are not precluded, because of the fiduciary nature of their position, from entering into and engaging in another business enterprise similar to but separate from the corporation if they act in good faith and refrain from interference with the business of the corporation. 13 Am.Jur., Corporations, section 999, p. 953, and Annotation, 64 A.L.R. 784. After there has been a severance of official relationship, either because of resignation or removal, generally a director or officer occupies no relation to the corporation of trust or confidence and deals with it thereafter like any other stranger; and he is not precluded from engaging in a competing business. Annotation, 64 A.L.R. 789, and 3 Fletcher Cyc. Corporations, section 860, p. 220.
There is no dispute that appellees knew that in entering into the new business they would be competing with the appellant corporation, nor is there any dispute that planning and negotiations were under way before the appellees Oppenheimer and Alson had severed their connections with the appellant. We are here solely considering injunctive relief. The appellees did not begin the operation of the new business until after the severance of their relationship with appellant. Neither of the appellees at the time of the severance had any interest in the appellant corporation. The appellee, Feingold, never had any connection with the appellant corporation. The complaint does not charge that Oppenheimer or Alson had entered into an agreement not to engage in a competing business, not to entice away any employee, or not to solicit customers of the appellant; nor does it charge that any trade secrets, trademarks or confidential matter was obtained.
*645 The Florida case of Pure Foods v. Sir Sirloin, Inc., Fla. 1955, 84 So.2d 51, is one where the appellee corporation engaged in preparing and selling frozen and fresh meats named as "specialty products". Appellee compiled through his agents a list of customers with all employees cautioned not to disclose the names on the list. Among the confidants were three salesmen and the officer manager. Appellee charged that one of the salesmen started a campaign to persuade other employees to leave appellee's service and work for appellant, Pure Foods, Inc., and that he was successful in inducing the other salesmen and the office manager to do so. The one who had been the office manager began to win customers and persuade them to trade with the competitor, Pure Foods, Inc. All of the individuals, when they left the employ of the appellee, became owners of an interest in appellant, Pure Foods, Inc. Appellee was granted certain injunctive relief by the chancellor, including injunction against the appropriating of the list of customers' names. The Supreme Court stated, in reversing the decree, quoting from page 53:
"We are not aware of any evidence that any list of customers was taken physically by the departing employees, and although we understand that according to some authorities, Colonial Laundries, Inc., v. Henry, 48 R.I. 332, 138 A. 47, 54 A.L.R. 343, one may not divulge a trade list simply because it is not carried away in writing, but mentally, there is authority to the contrary, El Dorado Laundry Co. v. Ford, 174 Ark. 104, 294 S.W. 393. But we do not think the circumstances of this case justify further exploration of the law on that subject or a condemnation of appellee's erstwhile employees because they undertook to sell to customers whom they had come to know during their former employment. Both corporations were wholesalers and their products were sold to retailers of food such as restaurants and `drive-ins.' Certainly the names of such concerns were easily obtainable from classified telephone directories and like sources, and surely the employees of appellee who became owners of an interest in the appellant-corporation could not be precluded from attempting to sell all customers whom they had known in their former positions. Newark Cleaning & Dye Works v. Gross, 97 N.J. Eq. 406, 128 A. 789."
It is to be noted that in this case the corporations were wholesalers, as in the instant case. The court also stated that no questions of a contract not to compete or of trade-marks or copyrights had been established. In the instant case there are no allegations on these subjects.
Generally, in the absence of an express contract equity will not enjoin an agent or employee, after the cessation of his employment, from soliciting business from customers of a former principal or employer where no business secret or trust had been reposed in him because of this relationship. Knowledge acquired by an employee concerning names and addresses of customers is not the property of the employer unless such has been obtained in confidence. Skill and knowledge are assets gained by an employee which are transferable to his future use in business and in life and which become a part of his own mental equipment. It is impossible to leave them behind so long as they exist within the mind of the employee. Not all knowledge gained by an employee or agent is confidential and in such instance equity has no place in restriction of its subsequent use. 28 Am.Jur., Injunctions, sections 113 and 114, pp. 306-308, and 43 C.J.S. Injunctions § 148 b, pp. 755-757. See also Simms v. Burnette, 1908, 55 Fla. 702, 46 So. 90, 16 L.R.A.,N.S., 389.
As previously indicated, the appellant is a wholesaler of certain types of supplies and merchandise to hotel supply firms and retail businesses. Generally, where a former employer is engaged in business as *646 a manufacturer or wholesaler dealing primarily with retail merchants or jobbers, or sells to members of a readily ascertainable class, the knowledge of the names of the customers of the employer which a former employee has is not a "trade secret" which equity will protect through injunction. See 43 C.J.S. Injunctions § 148 b, p. 757, and Haut v. Rossbach, 1940, 128 N.J. Eq. 77, 15 A.2d 227, affirmed 128 N.J. Eq. 478, 17 A.2d 165.
Nothing can be gleaned from the complaint that appellant's customers were lured away through unfair competition involving the pilfering or the physical appropriating of a list of customers' names, nor that there was improper use of knowledge concerning identity of appellant's customers; nor is it alleged that appellant had an exclusive franchise for distributing the products of the two named manufacturers which was violated when appellee obtained a distributorship of the same products in the Miami area.
The basis of appellant's complaint against the appellees Alson and Feingold is that, because of their knowledge of Oppenheimer's fiduciary capacity with appellant and their entering into the new business with him, such conduct constituted a conspiracy to undermine appellant.
A widely accepted definition of "civil conspiracy" as stated in 15 C.J.S. Conspiracy § 1, pp. 996-997, "is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means". This same definition is expressed in 11 Am.Jur., Conspiracy, section 3, p. 543. In the same volume of Am.Jur. at page 544, the same concept is voiced by defining conspiracy "as an agreement, confederation, or combination of two or more persons to do an unlawful act or to do or accomplish a lawful act or legal end by unlawful means, to do something wrongful either as a means or an end, or to effect an illegal purpose either by legal or illegal means or to effect a legal purpose by illegal means".
In the case of Hunter Lyon, Inc., v. Walker, 1942, 152 Fla. 61, 11 So.2d 176, the Supreme Court of Florida held the gist of an action for conspiracy to wantonly interfere with one's business must be a malicious, wanton, and unlawful disturbance or interference with his business to his damage. Where there is a refusal on the part of customers to deal with the party complaining, the conduct causing it must be shown to be a wanton and unlawful interference.
General allegations of conspiracy are inadequate; the allegations must be clear, positive, and specific. Gair v. Lockhart, Fla. 1950, 47 So.2d 826, and In re Ruch's Estate, Fla. 1950, 48 So.2d 289. The allegations in the instant case are insufficient to state a charge of conspiracy for which injunctive relief could be granted.
The gravamen of the charge is that the appellees who entered into the new business embarked upon a competing business, that they obtained names of appellant's customers, took away some of them, and acquired distributorships of two manufacturers for whom appellant had been the sole distributor in Florida. Even though the plans had been carried on while the appellee Oppenheimer, as well as appellee Alson, was connected with appellant, none of these things, in the manner in which they are alleged, are sufficient to lay a basis for injunctive relief. As stated at the outset, this proceeding was primarily for injunctive relief against appellees' engaging in competitive business with appellant and against their soliciting business from appellant's customers. Accordingly, under the authorities cited the decree of the chancellor should be and is hereby affirmed.
Affirmed.
ALLEN and SHANNON, JJ., concur.