237 So.2d 291 (1970)
INLAND RUBBER CORPORATION, Appellant,
v.
Leonard HELMAN, Appellee.
No. L-479.
District Court of Appeal of Florida, First District.
July 7, 1970.
*292 George L. Hudspeth, of Mahoney, Hadlow, Chambers & Adams, Jacksonville, for appellant.
E. Charles Oberdorfer, of Reinstine, Reinstine & Panken, Jacksonville, for appellee.
SPECTOR, Judge.
Appellant, the former employer of appellee, seeks reversal of an adverse summary final judgment in a declaratory judgment action brought by the latter holding that certain provisions of an employment contract between the two parties were invalid.
By his complaint, appellee alleged that on January 1, 1963, he entered into an employment agreement with appellant whereby he was employed as sales manager of Fleet Tire Mart, National Fleet Service, a division of appellant corporation. The said agreement contained a clause by the terms of which appellee agreed to abstain and forebear while so employed and for a period of two years thereafter from making known to any person or firm any confidential information from the files and records of the appellant employer. Further, it provides that during the term of employment and two years thereafter the appellee-employee would not own, operate or control or be a director, trustee, partner, officer, employee or consultant of any person, firm or corporation which is in the business of the manufacture or sale of tires or tubes and which solicits the sale of tires or tubes or sells the same to any person, firm or corporation which has been a customer of the appellant employer during the two year period preceding the termination of the employment.
The complaint concluded with the contention that the employment agreement is violative of the laws of this State in that the same is an agreement in restraint of *293 trade and restrains the plaintiff-appellee from exercising a lawful trade or business in violation of Section 542.12, Florida Statutes, F.S.A.
Appellant filed its anwer denying generally the contentions of appellee and further counterclaimed for the issuance of an injunctive order restraining appellee from violating any of the provisions of the employment contract described hereinabove and grounded such prayer upon the contention that the subject contract was valid under the provisions of Section 542.12(2), Florida Statutes, F.S.A.
Section 542.12(1) (2), Florida Statutes, F.S.A., is as follows:
"(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsections (2) and (3) hereof, is to that extent void.
"(2) One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction." (Emphasis supplied)
The trial court held that the contract provision related above was unenforceable in that the same is in violation of the cited statute; and, therefore, the agreement is void and not binding on appellee Helman. In its final judgment, the court stated as the basis for its ruling that the contract provision was violative of the statute because of the absence of any designated territorial limitation in the contract as to which the restriction would be operative. In support of the trial court's ruling in his favor, appellee cites Capelouto v. Orkin Exterminating Company of Florida, Inc., 183 So.2d 532 (Fla. 1966); McQuown v. Lakeland Window Cleaning Co., 136 So.2d 370 (Fla.App. 1962), and like cases. We have no quarrel with such cases and the principles of law set forth in them. However, there is a significant factual distinction between the case at bar and the cases appellee relies upon.
In each of those cases, as well as the case authorities upon which they were decided, the contract that had been entered into between the employer and the employee contained the latter's agreement not to compete with the former by carrying on or engaging in a similar business as that being carried on by the employer. However, the contract entered into by the parties in this case did not contain a clause prohibiting the employee from engaging in a competing business. The only prohibition or restraint agreed to by the parties related to the use of the appellant employer's active customer lists. Appellee was not precluded by the contract from establishing a tire store across the street from appellant's place of business. The only protection contracted for by appellant and agreed to by the appellee related to the customer lists and not business competition itself.
None of the cases cited in the briefs nor discovered by our own research involves the application of Section 542.12, Florida Statutes, F.S.A., to an agreement between employer and employee relating only to customer lists. Most of the cases applying the statute center upon the reasonableness of the time and area limitation provided by the contract upon the employee's agreement not to engage in a competing business. No case has been cited or found which squarely holds, as did the trial court here, that the absence of a territorial limitation, vel non, renders void an agreement not to use the employer's customer list as *294 opposed to an agreement not to engage in a competing business. On the contrary, appellant argues that in Fountain v. Hudson Cush-N-Foam Corp., 122 So.2d 232 (Fla.App. 1960), the court enforced an agreement by an employee which had no territorial limitation not to reveal certain trade secrets relating to manufacturing processes gained during his employment by enjoining the employee not only from making the prohibited revelations but also enjoined him from being employed by a competing manufacturer on the assumption that Fountain's knowledge of his former employer's trade secrets would eventually result in their disclosure during his employment with the competitor.
In Fountain, supra, the object of the agreement between the employer and employee seemed to be the preservation of trade secrets or confidential information gained by the employee during the term of his employment.
In the case at bar, a similar intent appears to be the object of the contract between appellant and appellee. While the contract in question has many of the attributes of the usual "noncompete agreement", close inspection of the contract indicates that the parties intended the so-called "noncompete agreement" to relate only to the use by the employee of the customer lists of the employer. In Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. App. 1958), the court had before it a contention by the appellant that it was entitled to enjoin the appellees, one of whom was a former officer and managing employee, from engaging in a business in competition with the former employer as well as to enjoin the use of the latter's customer lists. It was not alleged that the appellee-defendant had entered into an agreement not to engage in a competing business or to solicit the former employer's customers, nor was it alleged that the names or lists of such customers were a trade secret or confidential matter which had been obtained in confidence. In affirming the Chancellor's refusal to issue an injunction, the appellate court made the following observation regarding that phase of the case concerning the solicitation of business from the customers of a former employer:
"Generally, in the absence of an express contract equity will not enjoin an agent or employee, after the cessation of his employment, from soliciting business from customers of a former principal or employer where no business secret or trust had been reposed in him because of this relationship. Knowledge acquired by an employee concerning names and addresses of customers is not the property of the employer unless such has been obtained in confidence. Skill and knowledge are assets gained by an employee which are transferable to his future use in business and in life and which become a part of his own mental equipment. It is impossible to leave them behind so long as they exist within the mind of the employee. Not all knowledge gained by an employee or agent is confidential and in such instance equity has no place in restriction of its subsequent use. * * *"
Thus, the court recognized that the use of customer lists of a former employer could be enjoined if the parties had entered into an express contract to that effect and if the knowledge concerning the names and addresses of customers came within or constituted trade secrets or had been obtained in confidence. The agreement in the case at bar contained a provision under which the employee, appellee herein, agreed:
"8. (c) To abstain and forbear at all times while employed by the Employer and thereafter for a period of two years from revealing or making known to any other person, firm or corporation, any confidential information from the files and records of the employer; for purposes of this Agreement, `Confidential Information' shall include, but is not limited to, any and all price information, customers' lists, credit reports and contracts and invoices of the Employer, and *295 particular methods or means of conducting the business of the employer developed while the employee is employed by the Employer;"
The above excerpt from the agreement makes it clear that as between the parties the customer lists, methods of doing business, etc., were to be regarded between them as confidential information. In view of the parties' express contractual agreement, a court of equity can properly enjoin the breach thereof as it relates to customer lists of a secret or confidential nature without violating Section 542.12, Florida Statutes, F.S.A. The statute does not contemplate agreements relating to trade secrets or confidential customer lists, knowledge of which was gained during a former employment. The requirement that contracts coming within the purview of the statute contain reasonable provisions as to time and territorial limitations contemplates contracts in which the prohibited activity consists primarily of the engagement in a competing business, and it is in connection with such engagement during a reasonable time and territorial limitation that the statute authorizes an agreement to refrain from using customer lists. Nowhere in the statute does it appear that the reasonable time and territorial limits were intended to apply to an agreement concerning the use of customer lists unconnected with a contemporaneous agreement not to engage in a competing business.
In absence of an agreement between the parties providing therefor, the use of a former employer's customer lists is not subject to injunction unless such lists constitute or are in the nature of trade secrets and knowledge thereof was obtained in confidence. This is particularly so where the names of such customers are readily obtainable from classified telephone directories and like sources. Pure Foods v. Sir Sirloin, Inc., 84 So.2d 51 (Fla. 1955). In that case, the court found inoffensive the use by former employees of the names of food retailers consisting of restaurants and drive-ins to whom their former employer, a wholesaler, sold its merchandise. The rationale of its decision rested largely upon the readily ascertainable character of the customers' names.
We have examined the affidavit submitted by an officer of the appellant ocrporation in opposition to appellee's motion for summary judgment. That affidavit describes the method by which appellant has created its customer lists containing the names of persons who purchase truck tires throughout the country. It appears that appellant, through its division, Fleet Tire Mart, is engaged in the business of selling tires by telephone to operators of fleets of trucks. This business operation is conducted throughout the fifty states in the nation from two offices, one located in New York City and the other in Jacksonville, Florida. Prior to the termination of his employment, appellee was manager of the Jacksonville office.
Fleet Tire Mart obtains raw lists of truck operators and other concerns which maintain trucks, either by purchase or lease. These raw lists are purchased by appellant and thereafter screened to winnow out four categories: (a) those who have the capacity and authority to buy truck tires; (b) those who do not have any particular relationship with a major manufacturer or distributor; (c) those who will buy non-nationally advertised brands of tires; and, (d) those who have made no purchases from Fleet Tire Mart previously. Thereafter, appellant conducts a direct mail campaign addressed to prospective customers falling within the above categories. The rate of response is less than three percent. These mail responses are turned over to its salesmen who have been specially trained and been given detailed technical knowledge of the particular needs of the buyers whom they solicit for sales by telephone all over the United States. The salesmen succeed in making sales to approximately twenty-five percent of the customers telephoned. Persons who order or intend to order tires are further screened by the credit department and poor *296 credit risks are excluded. Appellant maintains a separate confidential and numbered file for each of its accounts for customers in which is kept a complete history of the transactions and dealings between the customer and appellant. All correspondence, credit information, sales memoranda, copies of orders, contracts and invoices, as well as records of payment are kept in the file. Appellant alleges in its affidavit that the screening process represents the accumulation of twenty years of work, and that the customer lists in separate files for each of them comprise the most valuable asset of the Fleet Tire Mart Division.
Appellant's affidavit further avers that its customer lists are information of confidential nature and that such fact is made apparent to each managerial employee, of which appellee herein was one, at the time the list is disclosed. Appellant further states that unless its customer lists and information relating thereto is kept confidential, appellant cannot operate at a profit because of the great expense it incurs in continually screening the minute percentage of telephone customers from the over one million truck tire buyers in the country. Appellant states that it is because of this great expense that it makes it a condition of employment of every managerial employee and salesman that such information shall be treated as confidential information.
We agree with appellant's contention, assuming the facts averred in its affidavit are true, that its customer lists constitute confidential information which is subject to protection against infringement by former employees in a court of equity. This is particularly so in a case such as this where the parties by their contract have acknowledged the confidential character of the information involved and have agreed in writing that upon termination of the employer-employee relationship, the latter will not violate the confidence.
Although neither of the attorneys for the parties to this appeal has cited the case, it appears that the appellant involved in the instant case has litigated an almost identical question as that here involved in the federal courts. See Inland Rubber Corporation v. Triple A Tire Service, Inc., 210 F. Supp. 880 (Dist.Ct., S.D.New York 1962). In that case, the court entered a temporary injunction restraining Inland's former managerial employee from using the customer lists and stated the following:
"Finally, in balancing the equities of the parties, it must be noted that an injunction, which this court concludes should issue, will leave defendants free to fairly conduct the business of selling tires by telephone. * * *
"The defendants are free to exploit this market in the same manner as did plaintiff, * * *. What is proscribed by the injunction * * * is the use by defendants of their knowledge of the identity of plaintiff's customers."
We hold that the pleadings and affidavits before the trial court were sufficient to create justiciable issues of fact on the question of whether the customer lists herein involved were of such nature and character that they can properly be treated as confidential information and therefore subject to an agreement between an employer and employee not to reveal such information without prior approval of appellant. Accordingly, the summary judgment reviewed herein is reversed and this matter is remanded for further proceedings not inconsistent herewith.
JOHNSON, C.J., and WIGGINTON, J., concur.