511 So.2d 1050 (1987)
Harry G. BLACKSTONE, D.O., P.A., and Harry G. Blackstone, Appellants,
v.
DADE CITY OSTEOPATHIC CLINIC, M. Oliva, D.O., P.A., Appellees.
No. 87-100.
District Court of Appeal of Florida, Second District.
August 7, 1987.
Rehearing Denied September 4, 1987.
Steven T. Northcutt of Levine, Hirsch, Segall, Northcutt & Hanlon, P.A., Tampa, for appellants.
Thomas E. Parnell of Gibbs, McAlvanah & Parnell, P.A., Dade City, for appellees.
SCHEB, Acting Chief Judge.
Appellants, Harry G. Blackstone, D.O., P.A. (Blackstone P.A.), and Dr. Harry G. Blackstone (Dr. Blackstone), challenge a judgment awarding damages to Dade City Osteopathic Clinic, M. Oliva, D.O., P.A. We reverse.
*1051 The Clinic and its sole stockholder, Dr. Marcelino Oliva, entered into an "Independent Contractor Agreement" with Blackstone P.A. for Dr. Blackstone to render osteopathic medical services to the Clinic's patients. The initial term of the contract was from September 1, 1983, to December 31, 1983. It provided for automatic renewal for successive one year periods, but allowed the Clinic to terminate the agreement without cause, upon thirty days' notice to Blackstone P.A. The contract did not include any noncompetitive covenant. On June 4, 1984, the Clinic terminated the agreement, and the following day Dr. Blackstone began practice at the office of Dr. Gary Fortunato, another Dade City osteopathic physician.
On April 8, 1985, Blackstone P.A. filed suit against the Clinic alleging it was owed certain sums of money. The Clinic denied liability and alleged as an affirmative defense that Blackstone P.A. had not performed its duties and, therefore, had breached the contract. The Clinic also filed a counterclaim against Blackstone P.A. and an identical third-party claim against Dr. Blackstone. The Clinic asserted that Dr. Blackstone had planned to join a competitor without advising Dr. Oliva and that he "stole a list of names of clients and customers of OLIVA from the offices of OLIVA" in violation of section 812.081, Florida Statutes. Alleging malicious and willful conduct, the Clinic sought compensatory and punitive damages.
At trial the Clinic introduced evidence that by May 24, 1984, Dr. Blackstone already had business cards printed with his new address at Dr. Fortunato's office. It also presented testimony of a nurse who had been working for Dr. Fortunato at the time Dr. Blackstone started practicing there. The nurse, who later worked for Dr. Oliva for a short period of time, testified that around February, 1984, Dr. Fortunato instructed her to tell his patients that Dr. Blackstone would be joining their office. She also stated that Dr. Fortunato had told her that Dr. Blackstone had plans to solicit the Clinic's patients during the summer of 1984 and get as many as he could to go with him.
At the conclusion of a non-jury trial the court entered judgment in favor of the Clinic, awarding it both compensatory and punitive damages. Blackstone P.A. and Dr. Blackstone filed this appeal.
The appellants argue that nothing in the record indicates that they failed to perform their duties under the agreement. Moreover, they contend, the fact that Dr. Blackstone made a list of some of the Clinic's patients and sent them announcements of his relocation did not constitute theft of a trade secret. In response, the Clinic maintains that Dr. Blackstone directly breached the contract by compiling a list of the Clinic's patients and taking it with him. This list, the Clinic claims, qualifies as a trade secret within the meaning of section 812.081, Florida Statutes. We find merit to the appellants' contentions.
Blackstone P.A. contracted for Dr. Blackstone to render professional services as an independent contractor, but even if he were an employee he would not be precluded from treating patients he had come to know while working at the Clinic. See Pure Foods v. Sir Sirloin, 84 So.2d 51 (Fla. 1955). Since there was no noncompetitive clause, upon termination of his contract with the Clinic Dr. Blackstone was free to notify his former patients of the new location of his practice.
A customer list may be considered a trade secret, and former employees may be prohibited from contacting their former employer's customers. Unistar Corporation v. Child, 415 So.2d 733 (Fla. 3d DCA 1982). In Unistar former employees acquired a truly secret and valuable customer list compiled by their former employer and used it to start a competing business. The court found that the list reflected "considerable effort, knowledge, time, and expense on the part of the plaintiff." Unistar at 734. Here, however, there is no evidence that the names of the Clinic's patients were a secret and could not be obtained by other means. See Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2d DCA 1958). Dr. Blackstone testified that immediately after he was fired he *1052 made a list of the patients he had personally treated while working at the Clinic. Dr. Blackstone's testimony that he compiled his list of addresses from patients themselves, from the phone book, and from his own memory, was undisputed. Finally, we note, the Clinic failed to prove any tortious conduct or breach of contract on the part of Blackstone P.A. or Dr. Blackstone.
Accordingly, we vacate the judgment in favor of the Clinic and direct the trial court to enter judgment in favor of appellants. In view of our decision it becomes unnecessary for us to reach the points raised on the issue of damages.
RYDER and SCHOONOVER, JJ., concur.