552 So.2d 288 (1989)
"Bill" J. TEMPLETON, Appellant,
v.
CREATIVE LOAFING TAMPA, INC., Appellee.
Nos. 88-03519, 89-01457.
District Court of Appeal of Florida, Second District.
November 15, 1989.
*289 Steven L. Brannock and Stacy Blank of Holland & Knight, Tampa, for appellant.
James M. Landis and Judith W. Simmons of Foley & Lardner & Hill, Tampa, for appellee.
RYDER, Judge.
Appellant/defendant challenges the trial court's order granting appellee/plaintiff's motion for a temporary injunction and a separate order denying appellant's motion to modify or dissolve the injunction. We reverse.
For eight years, appellant was an employee of Steppin' Out-Suncoast Edition, Inc. (Steppin' Out), the owner of a publication known as Music, which was distributed to local restaurants, nightclubs, and music and record stores in the Tampa Bay area. The magazine was free for the taking at the establishments which carried copies of it, and the company derived its revenues solely from its advertisers, most of whom were local merchants. Appellant worked in both the editorial and advertising departments of Music and was the principal contact for the magazine's advertising clients. During his employment, appellant developed a list of potential advertisers, including actual advertisers in Music and a larger number of merchants who fit into the class likely to advertise in the publication but who had not chosen to do so. The list contained the names, addresses and contact persons of the various merchants. Appellant also kept a distribution list, which contained information regarding the order of delivery and the number of magazines to be dropped off at each location.
In October 1988, Steppin' Out was purchased by appellee, which publishes a local edition of its magazine in the Tampa Bay area known as Creative Loafing. A large portion of the purchase price consisted of the good will associated with Music. Approximately two weeks after the sale, on October 31, 1988, appellant resigned and started a competing magazine called Music Pulse. When he left Music, appellant had in his possession the advertiser and distribution lists he had kept at his former position, but he returned them to appellee a few days after he left. Within ten days after leaving, appellant had the first edition of Music Pulse ready for publication. Most of the 80 to 100 advertisers in Music Pulse were the same merchants who had advertised in Music, and Music Pulse was distributed to many of the same establishments to which Music had been distributed.
On November 7, 1988, appellee sued appellant, seeking damages and injunctive relief against appellant for what appellee alleged to be appellant's use of appellee's trade secrets, consisting of the allegedly confidential information on the advertiser and distribution lists. After two evidentiary hearings, the trial court granted appellee's motion for temporary injunction, finding that appellee had suffered irreparable harm as a result of appellant's use of its trade secrets and stating that appellant had used "everything this company purchased." On December 15, 1988, the court entered its order enjoining appellant from using the lists, and also enjoining him from soliciting or contacting any advertisers on the advertiser list or delivering to anyone on the distribution list. The court later entered an order denying appellant's motion to modify or dissolve the injunction. These consolidated appeals arise from those two orders.
In our view, the lists in question do not qualify as trade secrets entitled to injunctive protection. There is no evidence that they are the product of any great expense or effort, that they are distillations of larger lists, or that they include information not available from public sources. See Pure Foods, Inc. v. Sir Sirloin, Inc., 84 So.2d 51 *290 (Fla. 1955); Harry G. Blackstone, D.O., P.A. v. Dade City Osteopathic Clinic, 511 So.2d 1050 (Fla. 2d DCA 1987), review denied, 523 So.2d 576 (Fla. 1988); Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2d DCA 1958). In fact, the information on the lists is easy to obtain merely by looking at the advertisements in past issues of Music in addition to many other sources, such as the weekend sections of local newspapers and the yellow pages. Appellant testified that this was the method he used to compile his own advertiser and distribution lists in a very short period of time. We do not doubt that appellant was able to construct his own lists without reference to the lists he kept at Music, because there was no great secret as to the identity of likely advertisers and distributors, all of whom are members of a readily ascertainable class. See Renpak at 646.
The only arguably secret information on the advertiser list was the contact person information. However, the testimony shows that appellant knows all of these persons on a first name basis as a result of his experience working for Music and that he did not need a secret list to enable him to ascertain their identity. Appellant cannot be precluded from utilizing contacts and expertise gained during his former employment, Pure Foods, Blackstone, Renpak, or even customer lists he himself developed. Fish v. Adams, 401 So.2d 843 (Fla. 5th DCA 1981). As for the distribution information concerning the delivery route and the number of copies to be dropped off at each location, no great amount of expertise or even common sense is needed to fathom this data, which in any event does not appear to be overly crucial. Even if completely lacking in expertise and common sense, one could nevertheless obtain the distribution information merely by following appellee's delivery truck. See Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 415 Pa. 276, 203 A.2d 469 (1964).
Appellee cites cases in which courts have held that a secret customer list or other trade secret is entitled to injunctive protection. These cases, however, are inapposite because the lists in those cases were not available from public sources, were distillations of larger lists, and great effort and expense went into their preparation. See Unistar Corp. v. Child, 415 So.2d 733 (Fla. 3d DCA 1982); Erik Electric Co. v. Elliott, 375 So.2d 1136 (Fla. 3d DCA 1979); Inland Rubber Corp. v. Hellman, 237 So.2d 291 (Fla. 1st DCA 1970).
There is no other basis upon which the trial court could have imposed its injunction against appellant. There was no covenant not to compete between appellant and either appellee or its predecessor. See Blackstone. Appellant was not an owner of the selling corporation, Steppin' Out, so as to possibly entitle appellee to injunctive relief for impairment of good will. See Yoo Hoo of Florida Corp. v. Catroneo, 175 So.2d 220 (Fla. 3d DCA), cert. denied, 179 So.2d 212 (Fla. 1965). There is no evidence appellant engaged in disloyal acts in anticipation of future competition. See Insurance Field Services, Inc. v. White & White Inspection & Audit Service, Inc., 384 So.2d 303 (Fla. 5th DCA 1980). Since none of these factors are present in this case, and the evidence does not demonstrate that the information on the lists was confidential or was a business or trade secret, we reverse. See Keel v. Quality Medical Systems, Inc., 515 So.2d 337 (Fla. 3d DCA 1987). In light of our holding, we find it unnecessary to reach the other points raised and argued in the briefs.
Reversed with instructions to set aside the injunction entered herein.
CAMPBELL, C.J. and PATTERSON, J., concur.