**In re R & R ASSOCIATES OF PINEL-LAS COUNTY, INC., Debtor.**

**R & R ASSOCIATES OF PINELLAS COUNTY, INC., Plaintiff,**

**v.**

**Steve ARMENDINGER, Defendant.**

**Bankruptcy No. 89-7725-8P1.**

**Adv. No. 90-419.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 11, 1990.

John Yanchunis, St. Petersburg, Fla., for debtor/plaintiff.

Steve Armendinger, Seminole, Fla., pro se.

## ORDER ON APPLICATION FOR PRELIMINARY INJUNCTION

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with notice to all parties in interest upon an Application for Preliminary Injunction [sic], treated as a Motion for Preliminary Injunction, filed by R & R Associates of Pinellas County, Inc. (Debtor), the Debtor in the above-captioned Chapter 11 case. In sum, the Debtor seeks a preliminary injunction prohibiting Steve Armendinger (Defendant), the Defendant in this adversary proceeding, from interfering with the Debtor's business and from using the Debtor's list of customers to compete with the Debtor. The facts as established at the evidentiary hearing on this matter are as follows:

The Debtor is in the business of servicing, cleaning, repairing and maintaining swimming pools and spas for both commercial and residential use. As part of the Debtor's acquisition of the business in 1988, the Debtor obtained a list of the names and addresses of both residential and commercial clients. Since the Debtor purchased the business, it has increased the list, although it is undisclosed whether the Debtor was required to incur substantial expense or effort to do so. In fact, it appears that the names of clients on the list could be obtained from public sources such as a telephone directory. Although the list includes names of commercial clients, the Debtor is generally required to bid on its commercial accounts.

From approximately November 14, 1989, through July 14, 1990, the Debtor employed the Defendant as a Pool Route Cleaner. There is no evidence that the Defendant entered into a noncompete agreement with the Debtor. It appears that on the Defendant's first day of employment with the Debtor, he was informed that he would be responsible for servicing all the accounts on one of four service routes, which consisted of both residential and commercial accounts, primarily condominium complexes. It further appears that in order to learn the accounts on the route, the Defendant was directed to refer to a list of the names and addresses of those clients on the route posted on a partition behind the counter at the Debtor's business premises, which was open to the public for retail sales. The Debtor copied the names and addresses from the list and shortly thereafter had memorized the same.

The record reveals that the customer list was posted in an area not in direct view of the Debtor's customers, although it would have been possible for a customer or competitor to walk around the partition to view the list. It appears the Defendant was informed at various company meetings that the names and addresses of clients listed on the partition, together with the Debtor's pricing information, should not be divulged to competitors. It is clear, however, that the Defendant did not understand the lists to be secret.

The Defendant ceased working for the Debtor on July 14, 1990, and immediately thereafter commenced a partnership with one Gordon Grant to engage in the business of servicing and repairing pools under the name of "Pools–R–Us." It is undisputed that since his departure from the Debtor, the Defendant has successfully bid for and serviced pools for two customers, Gateway Square Condominiums and Watermark Condominiums, which were on the route

serviced by him while employed by the Debtor. Further, the Defendant has submitted a proposal for pool servicing to Point West Condominium, which was also one of the Debtor's clients; however, the Defendant has received no response regarding his proposal. Although the Defendant admits that he has serviced only these two commercial accounts since leaving the Debtor, the Debtor claims that within two weeks of the Defendant's departure, it had lost ten other accounts which were on the Defendant's route.

Based on the foregoing, it is the Debtor's contention that the Defendant is intentionally interfering with the Debtor's business and has taken the Debtor's trade secrets and confidential information, which has caused a disruption in the Debtor's business and a loss of income which constitutes irreparable harm to the Debtor.

In order to establish that a preliminary injunction should be entered, the Debtor must clearly show: 1) a substantial likelihood that it will ultimately prevail on the merits; 2) a showing that it will suffer irreparable injury unless the injunction issues; 3) proof that the threatened injury to it outweighs whatever damage the proposed injunction may cause the opposing party; and 4) a showing that the injunction, if issued, would not be adverse to the public interest. *Shatel Corp. v. Mao Ta Lumber & Yacht Corporation*, 697 F.2d 1352, 1354–55 (11th Cir.1983).

■ It is well established that a customer list *may* be considered a trade secret, and former employees may be prohibited from contacting their former employer's customers. *Unistar Corp. v. Child*, 415 So.2d 733 (Fla. 3d DCA 1982). For this to be the case, the customer list must reflect "considerable effort, knowledge, time and expense" on the part of the employer, or the list must be secret and *not available by other means. Id.*, at 734; *Templeton v. Creative Loafing Tampa, Inc.*, 552 So.2d 288 (Fla. 2d DCA 1989). It follows that if the information or the customer list is easy to obtain from public information such as telephone directories and the like, an employee can not be precluded from attempting to do business with customers he had known while working for his former employer. *Pure Foods, Inc. v. Sir Sirloin, Inc.*, 84 So.2d 51 (Fla.1955); *Blackstone v. Dade City Osteopathic Clinic*, 511 So.2d 1050 (Fla. 2d DCA 1987).

■ The list in question in the matter under consideration cannot be considered a trade secret, as there is no evidence that the list is the product of great expense or effort on the Debtor's part, or that the list contains information that is secret and not available from public sources. In fact, it would be simple for the Defendant to consult the telephone directory or go door to door to compile a list of clients identical to the Debtor's. Thus, based on the evidence presented, this Court is satisfied that the Debtor has failed to prove that there is a substantial likelihood that it will ultimately prevail on the merits of its Complaint. Neither does the evidence show that the Debtor will suffer irreparable injury unless the injunction issues or that any threatened injury to the Debtor outweighs the damage which would result to the Defendant if this Court granted the Debtor's Motion for Preliminary Injunction. The Debtor has, therefore, failed to prove its entitlement to a preliminary injunction against the Defendant.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Preliminary Injunction be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that this matter shall be scheduled for a pretrial conference before the undersigned in Courtroom A of the United States Bankruptcy Court, 4921 Memorial Highway, Tampa, Florida, on October 12, 1990, at 4:00 p.m.

DONE AND ORDERED.