618 So.2d 328 (1993)
Cecilia MITTENZWEI, Appellant,
v.
INDUSTRIAL WASTE SERVICE, INC., Appellee.
No. 92-2402.
District Court of Appeal of Florida, Third District.
May 11, 1993.
Rehearing Denied June 15, 1993.
Neil Flaxman, Coral Gables, for appellant.
Levine & Geiger and Suzan Jon Jacobs, Miami, for appellee.
Before BASKIN, GERSTEN and GODERICH, JJ.
BASKIN, Judge.
Cecilia Mittenzwei appeals an order granting the motion for temporary and mandatory injunction filed by Industrial Waste Service, Inc. [IWS]. We reverse.
Mittenzwei was a salesperson with IWS for fifteen years. Working on commission, *329 she sold IWS's waste disposal services to various companies. Mittenzwei developed clients and contacts by socializing with managers and customers. When IWS asked Mittenzwei to sign a non-competition agreement, she refused and left the company. Mittenzwei kept several activity sheets and copies of some sales contracts in order to keep track of commissions owed to her.[1]
Upon her departure from IWS, Mittenzwei formed a corporation for the purpose of brokering waste services. To that end, she contacted some clients with whom she had been dealing while employed by IWS. IWS sued Mittenzwei, seeking to enjoin her from contacting IWS customers, from divulging IWS confidential information, to obtain damages for her alleged violation of the Uniform Trade Secrets Act, and for tortious interference with IWS's contractual relations. After conducting a three-day hearing on IWS's verified motion for injunctive relief, the trial court found that IWS's computerized customer information and client lists were trade secrets because "its customer data is only the result of [IWS] developing a data base which costs millions of dollars to develop and hundreds of thousands of dollars a year to maintain. This information can only be accessed through the use of a password and is highly confidential to [IWS]." The trial court entered an order enjoining Mittenzwei from soliciting any business from IWS's customers, interfering with IWS's contractual relationships, or divulging IWS's confidential information.
Although it is well settled that a former employee may not use for her own advantage customer lists obtained in confidence or containing trade secrets, Unistar Corp. v. Child, 415 So.2d 733 (Fla. 3d DCA 1982); Erik Elec. Co., Inc. v. Elliot, 375 So.2d 1136 (Fla. 3d DCA 1979); Inland Rubber Corp. v. Helman, 237 So.2d 291 (Fla. 1st DCA 1970), here, the testimony does not support a finding that a customer list qualifying as a trade secret existed or was in Mittenzwei's possession. The courts in Unistar Corp., Erik Elec. Co., and Inland Rubber Co. declared to be trade secrets employer customer lists which were compiled at great time and expense. In those cases, evidence substantiated the companies' extensive efforts to obtain or solicit names and information about clients from various sources. In contrast, the Second District Court in Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989), found that a list of the company's clients was not entitled to injunctive protection in the absence of evidence that "they are the product of any great expense or effort, that they are distillations of larger lists, or that they include information not available from public sources." Templeton, 552 So.2d at 289.
A thorough review of the record discloses no evidence to demonstrate that IWS produced any customer list which might be considered a trade secret subject to protection by injunction. Although evidence disclosed the expense of installing and maintaining IWS's computer system, there was no evidence indicating the method for compiling the customer list, other than to say it grew as IWS's business grew, and was periodically revised. Compare Unistar Corp.; Erik Elec. Co.; Inland Rubber Co..
Furthermore, there is a lack of evidence to support a finding that Mittenzwei possessed any confidential list of IWS customers. Although testimony suggested that such a list might be available from the computer if the proper access codes were known, no evidence was adduced to demonstrate that Mittenzwei had such a code, accessed the customer list, or received such a list from anyone. Mittenzwei testified that she never accessed the computer herself, but relied instead on clerical employees for any information she needed.
Here, as in Templeton, Mittenzwei testified that she had a long-standing relationship with the clients she contacted. The record reveals that Mittenzwei did not rely on any IWS compiled list, but rather utilized *330 the relationships she developed over the years. A former employee "cannot be precluded from utilizing contacts and expertise gained during [her] former employment, or even customer lists [she herself] develops." Templeton, 552 So.2d at 290.
We also reverse the injunction insofar as it prohibits Mittenzwei from soliciting IWS customers. There is no evidence that she enticed IWS customers to break their contracts through unfair competition or practices. See Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla.2d DCA 1958); see generally Fish v. Adams, 401 So.2d 843 (Fla. 5th DCA 1981). "Competition for business by a competitor is not an actionable interference, even if intentional." Langford v. Rotech Oxygen & Medical Equip., Inc., 541 So.2d 1267, 1268 (Fla. 5th DCA 1989). In the absence of a noncompetition clause, Mittenzwei is free to contact anyone with whom she had established a relationship while employed by IWS. Pure Foods, Inc. v. Sir Sirloin, Inc., 84 So.2d 51 (Fla. 1955); Harry G. Blackstone, D.O., P.A. v. Dade City Osteopathic Clinic, 511 So.2d 1050 (Fla. 2d DCA 1987), review denied, 523 So.2d 576 (Fla. 1988).
Reversed and remanded.
NOTES
[1] These documents have been returned to IWS. We do not address this portion of the injunction.