DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PATIENT DEPOT, LLC,** a Florida limited liability company,
Appellant,

v.

**ACADIA ENTERPRISES, INC.,** a Florida corporation,
**RYAN O'CONNOR,** and **LORI ANN O'CONNOR,**
Appellees.

No. 4D21-1934

[April 26, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; G. Joseph Curley, Judge; L.T. Case No. 50-2020-CA-012726-XXXX-MB.

John J. Shahady of Shahady & Wurtenberger, P.A., Fort Lauderdale, for appellant.

David K. Markarian and Jessica R. Glickman of The Markarian Group, Palm Beach Gardens, for appellees.

WARNER, J.

Appellant, Patient Depot, timely appeals a final summary judgment in favor of appellees, Acadia Enterprises, Inc., Ryan O'Connor, and Lori Ann O'Connor, on its complaint for breach of contract, misappropriation of trade secrets, tortious interference, and unjust enrichment. The trial court concluded that the information Patient Depot claimed was appropriated by appellees was neither confidential nor protected as a trade secret because it was generally in the public domain. We reverse, as a genuine issue of material fact remains as to whether the compilation of the information, even that which was within the public domain, constituted information protected as a trade secret. We also conclude that summary judgment was premature, in any event, because discovery was ongoing in the early stages of this case and was not complete which could have revealed additional genuine issues of material fact. Finally, the trial court dismissed a claim for tortious interference when the issue upon which the trial court ruled was not addressed in any pleading.

Patient Depot operates as a broker of personal protection equipment ("PPE") by matching PPE end consumers with PPE suppliers. Patient Depot's founding principals, Adam Buglio and Dana Ressel, had worked in the medical supply industry for "decades." Prior to the pandemic, the principals had "numerous contacts and established relationships with high level decision makers at many medical supply consumers" and "many medical supply providers and manufacturers." When the pandemic happened, they were aware of suppliers who began producing PPE and the demand for PPE by medical supply consumers. Patient Depot built its client and supplier relationships by leveraging its contacts and "under[taking] the great labor of contacting a great number of [their] contacts and culling the universe of potential suppliers and customers down to a list of viable . . . high volume PPE suppliers and customers." Viable in this context meant "dependable suppliers with proven track records or credentials whom large customers trust will deliver goods ordered."

Patient Depot believed that the principals' knowledge, together with their relationships with medical supply customers and suppliers, gave it a competitive advantage in brokering PPE sales. Their knowledge allowed them to create a list of PPE suppliers that could fulfill orders more rapidly than other competitors.

Patient Depot maintained a website platform with a password protected dashboard called "Zoho Workdrive" ("Zoho") that contained its exclusive information. Patient Depot considered the Zoho platform to be its "intellectual property protected by the Agreements and a trade secret." This platform contained a list of viable suppliers, including contact information, pricing, contract terms including commission rate to Patient Depot and its sales representatives, and supply availability. The platform also contained customer contacts and purchase history. All of this platform information allowed Patient Depot to quickly obtain and fill customer orders. Patient Depot created sales strategies and sales pitches to assure high volume customers that their suppliers could meet high volume PPE orders. The information collected on Zoho boosted Patient Depot's speed in processing purchase orders from its customers to its suppliers, which provided Patient Depot a competitive advantage in the marketplace.

Patient Depot's principal Adam Buglio was a neighbor with appellee Ryan O'Connor, a principal of appellee Acadia. O'Connor had no experience in medical supply and was out of work in early 2020. Buglio spoke with O'Connor about selling PPE. Patient Depot and O'Connor entered into a Sales Representative Agreement on March 30, 2020. Then

Patient Depot entered into the same agreement with Acadia, O'Connor's company, on April 5, 2020.[1]

Section 4.1 of the agreement provided that O'Connor's and Acadia's status was that of an independent contractor. Section 6.1 set forth the following confidentiality provision:

> Confidentiality. Representative acknowledges that in the course of performing its duties under this Agreement, Representative may obtain information related to Company and its customers, which is of a confidential or proprietary nature ("Confidential Information"). Such *Confidential Information may include but is not limited to* manufacturing partners, *trade secrets*, techniques, processes, schematics, software source documents, *pricing and discount lists and schedules, customer lists, contract terms, customer leads, financial information, sales and marketing plans*, and information regarding the responsibilities, skills and compensation of employees. *Representative agrees* to treat the Confidential Information with at least the degree of care and protection with which it treats its own confidential information, but in any event with no less than reasonable care and protection, and *to use the Confidential Information only for the purpose set forth in this Agreement.*

(Emphasis supplied.). Thus, the agreement identified trade secrets as confidential information.

Section 6.2 also included the following nondisclosure provision:

> Nondisclosure. Representative agrees not to disclose or otherwise make such Confidential Information available to third parties without Company's prior written consent except to the extent the Representative can prove that the Confidential Information (a) was in the public domain at the time it was disclosed or has entered the public domain through no fault of Representative; (b) was known to the Representative, without restriction, at the time of disclosure, as demonstrated by files in existence at the time of disclosure; or (c) became known to Representative, without restriction, from a source other than Company without breach of this

---

[1] Both appellees Ryan O'Connor and Lori Ann O'Connor are appellee Acadia's principals.

Agreement by Representative or otherwise in violation of Company's rights.

The agreement did not include a non-competition or non-solicitation clause.

Appellees possessed access to the information compiled by Patient Depot on every single supplier and client account through the password protected Zoho platform. On September 19, 2020, O'Connor terminated his and Acadia's agreements. Appellees commenced competing with Patient Depot in sales of PPE.

Patient Depot filed suit against appellees in November 2020. In the operative second amended complaint, Patient Depot alleged that appellees Ryan O'Connor and Acadia had breached their agreements by retaining Patient Depot's confidential information prior to terminating their relationship, and then using the confidential information to compete with Patient Depot.

The complaint also alleged counts for misappropriation of trade secrets in violation of the Florida Uniform Trade Secrets Act, section 688.001, Florida Statutes (2020), asking for injunctive relief and damages. The complaint identified its website platform as a trade secret and alleged that appellees had used or disclosed to third parties the confidential information. Finally, Patient Depot alleged counts for tortious interference with advantageous business relationships and unjust enrichment. Patient Depot did not identify in its complaint which suppliers and customers were at issue, but through discovery identified sixteen suppliers.

Immediately upon filing the complaint, Patient Depot sought discovery from appellees. Appellees filed objections to Patient Depot's initial discovery requests, and Patient Depot moved to compel.

Appellees never answered the complaint. Instead, they moved for summary judgment. Although they filed an amended verified motion for summary judgment, they filed it before the second amended complaint was filed. Nevertheless, the trial court apparently heard appellees' amended motion for summary judgment as if appellees had directed their amended motion to the second amended complaint. Appellees did not provide outstanding discovery until after summary judgment was heard.[2]

_____

[2] The final summary judgment was entered on May 20, 2021. Appellees produced documents to Patient Depot after the hearing on May 5th and the Plaintiff made a supplemental filing based on those documents on May 10th. The record shows

In their amended motion for summary judgment, appellees argued that the information deemed "confidential" by Patient Depot was already in the public domain through no fault of appellees. For support, appellees provided affidavits and internet searches to show that the PPE suppliers' identities was information in the public domain prior to signing the agreement, including the sixteen suppliers identified by Patient Depot as the ones at issue.

Appellees also submitted affidavits from two Patient Depot PPE suppliers in support of the amended motion. Both suppliers attested that their entry into the PPE supply business was information within the public domain prior to the end of March 2020, and appellees never disclosed to these suppliers any confidential information from Patient Depot. Nowhere in the motion for summary judgment or the affidavits did appellees attest that they did not use confidential information. They only attested that they did not disclose it to third parties.

Alternatively, appellees argued in their amended motion for summary judgment that it would hinder public policy in the midst of a pandemic to enforce the provisions of the agreement and limit competition.

Patient Depot filed a response to the motion. In the response, Patient Depot argued that appellees improperly limited what constituted Patient Depot's confidential information to the names of its customers and suppliers. Appellees did not address or bring any opposing evidence to counter Patient Depot's assertion that the confidential information included the Zoho platform compilation of information, such as the supplier being a "viable" supplier, supplier contacts, pricing, supply availability, discount information, high volume PPE customers, customer purchase histories, client contacts, customer leads, and sales techniques. Patient Depot contended that this other information compiled on the Zoho platform was confidential in accordance with the terms of the agreement. Patient Depot also argued that discovery was still outstanding.

In support of its response in opposition to the amended motion for summary judgment, Patient Depot filed the affidavit of its founding principal, Buglio. He described the efforts made to compile both supplier and customer information on the website platform as detailed in the complaint. He noted that the platform included more than the information

appellees' notice of serving supplemental answers to the first set of interrogatories and request to produce were not provided to Patient Depot until July 2021 according to the certificates of service.

5

in the public domain. Buglio averred that the purpose of the confidentiality provision, section 6.1, was for "the identified sales representative to use Patient Depot's confidential information to assist Patient Depot in selling PPE and not to compete against Patient Depot or usurp sales from Patient Depot."

After a hearing on appellees' amended motion for summary judgment, at the trial court's invitation,[3] Patient Depot filed its attorney's affidavit, attesting to all the discovery outstanding and how it could affect the issues and facts of the case. Nevertheless, the court entered its order granting summary judgment, just over six months after the complaint was filed. The court found that the following information was in the public domain prior to the agreements' effective dates:

> (1) a global public health crisis existed; (2) demand for PPE was high; (3) the identity of end consumers demanding PPE; and (4) the identity of suppliers assisting in the distribution of PPE. The Court bases this finding on the no less than 108 publicly available online articles set forth in Exhibit "C" to Defendants' Motion.

The trial court noted that the agreements did not contain non-competition or non-solicitation provisions, just a "defined universe of confidential information." The agreements made clear that the confidentiality provisions did not apply to information that "was in the public domain at the time it was disclosed" or had "entered the public domain through no fault" of appellees; "was known to [appellees], without restriction, at the time of disclosure"; or "became known to [appellees], without restriction, from a source other than Company[.]"

The trial court recognized that Patient Depot identified sixteen suppliers as part of their confidential list. In addition to the suppliers' identities, Patient Depot claimed that certain supplier information, such as pricing, discounts, and availability, was also confidential. However, the court found:

> 17. . . . . Where Defendants have shown that the identity of each of the 16 Suppliers is already in the public domain, any broker could contact these Suppliers and request this information, claimed to be confidential by Patient Depot. This

---

[3] At the summary judgment hearing, the court acknowledged that Patient Depot had not received discovery documents. Patient Depot advised the court that it had given the court "everything we have."

6

information is not generated by Patient Depot itself, but are materials that the Suppliers would provide to any third-party broker, via a specification sheet. Patient Depot admitted in response to interrogatory number 23 in the Companion Case, which has been consolidated with this matter for discovery purposes, that specification sheets and their content are generated directly by the Suppliers and sent to brokers. For these reasons, the Court finds that such information is not confidential, nor entitled to protection under the Agreements or as trade secrets.

. . . .

20. Defendants make the factual assertion under oath in Defendants' Motion that Defendants did not use or disclose Patient Depot's "Confidential Information" as defined by Patient Depot's Second Amended Complaint in connection with any of the Suppliers. Exhibits "D" – "S" to Defendants' Motion. Plaintiff's opposition evidence fails to rebut such showings.

The trial court also found that Patient Depot's opposition evidence failed to rebut either of the two suppliers' affidavits, in which the two suppliers averred that appellees had not disclosed any confidential information to them. Appellees also attested that they did not do business with eleven of the sixteen identified suppliers.

The trial court discounted the Buglio affidavit submitted by Patient Depot. Buglio's affidavit did not contradict the suppliers' averments that appellees had not disclosed confidential information to them.

In sum, the trial court found that appellees demonstrated that information concerning suppliers and customers of PPE was not confidential. The court further found the Buglio affidavit failed to create a genuine dispute as to whether appellees had disclosed confidential information. Accordingly, the court entered summary judgment in appellees' favor on all of Patient Depot's claims.

Patient Depot moved for rehearing on multiple grounds, including that the summary judgment was premature because of outstanding discovery. In support of its motion, Patient Depot filed supplemental discovery documentation which appellees had provided after the hearing. The supplement included email correspondence showing that Patient Depot provided O'Connor with access to the Zoho platform and showing

O'Connor accessed the platform while working for Patient Depot. The supplement also included emails between O'Connor and a PPE supplier in June and July 2020 showing O'Connor no longer using his Patient Depot email address to do business with this supplier identified in the Zoho platform but before the termination of his relationship with Patient Depot.

The trial court denied rehearing. As to discovery, the court noted that Patient Depot had made a supplemental filing with leave of court, but the court found the evidence insufficient. Further, the court stated that additional discovery would not change the court's finding that the information was in the public domain and thus was expressly excluded as confidential information under the agreements. The court found that because the agreements failed to include either a non-competition clause or non-solicitation clause, appellees' behavior was insufficient to support a tortious interference claim.

From the final judgment and order denying the motion for rehearing, Patient Depot has filed this appeal.

The entry of summary judgment is reviewed de novo. *Gromann v. Avatar Prop. & Cas. Ins. Co.*, 345 So. 3d 298, 300 (Fla. 4th DCA 2022); *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). The rule governing summary judgments is Florida Rule of Civil Procedure 1.510.

Our supreme court has stated that the summary judgment rule, as amended, follows the federal summary judgment standard. *In re Amends. to Fla. R. Civ. P. 1.510*, 309 So. 3d 192, 194 (Fla. 2020) ("*In re Amends. 1.510 I*"); *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 74 (Fla. 2021) ("*In re Amends. 1.510 II*") (further amending the rule after public comment so as to "largely adopt" the text of Federal Rule of Civil Procedure 56). Under the adopted federal standard, "a moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the nonmovant's case." *In re Amends. 1.510 II*, 317 So. 3d at 75. "[T]here is 'no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.'" *In re Amends. 1.510 I*, 309 So. 3d at 193 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 325).

Patient Depot argues that appellees failed to satisfy their burden of proof on summary judgment. Patient Depot contends that appellees did

not show that all the confidential information, covered by the agreements and alleged in the operative complaint, was neither confidential nor a trade secret, nor did appellees refute that they used the confidential information in violation of the agreements' confidentiality provision.

We conclude that material issues of fact exist with respect to whether the Zoho platform constituted a trade secret and confidential information protected by the confidentiality provision of the agreements. While the trial court found that the suppliers' identities were in the public domain, and pricing and commission information could be obtained from the suppliers themselves, appellees did not offer proof as to whether customer information, including order histories, was within the public domain or had been furnished to appellees from sources other than the Zoho platform. Moreover, contrary to the court's finding, appellees never attested that they had not used the information found on the Zoho platform, including how Patient Depot compiled the data on the Zoho Platform, even though appellees attested that they had not disclosed the information to any third parties.

Importantly, the trial court did not sufficiently dispose of the claim that the Zoho platform constituted a trade secret within the confidentiality provision of the agreements and thereby supporting Patient Depot's claim of misappropriation of trade secrets. Florida's Uniform Trade Secret Act defines "trade secret" as follows:

> [I]nformation, including a formula, pattern, *compilation*, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 688.002(4), Fla. Stat. (2020) (emphasis supplied). "[I]t is well settled that a former employee may not use for her [or his] own advantage customer lists obtained in confidence or containing trade secrets." *Mittenzwei v. Indus. Waste Serv., Inc.*, 618 So. 2d 328, 329 (Fla. 3d DCA 1993).

Even if information is available to the public, the information may be compiled in a manner which warrants trade secret protection. In *Digiport, Inc. v. Foram Development BFC, LLC*, 314 So. 3d 550 (Fla. 3d DCA 2020),

the court discussed how public information may still become part of a protected trade secret under the statute:

> Ordinarily, "whether a particular type of information constitutes a trade secret is a question of fact." This is because "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret." Accordingly, "[e]ven if all of the information is publicly available, a unique compilation of that information, which adds value to the information, also may qualify as a trade secret."

*Id.* at 553 (alteration in original) (internal citations omitted).

We held similarly in *Bridge Financial, Inc. v. J. Fischer & Associates, Inc.*, 310 So. 3d 45 (Fla. 4th DCA 2020), when we explained, "[a] customer list can constitute a 'trade secret' where the list is acquired or compiled through the industry of the owner of the list and is not just a compilation of information commonly available to the public." *Id.* at 48 (quoting *E. Colonial Refuse Serv., Inc. v. Velocci*, 416 So. 2d 1276, 1278 (Fla. 5th DCA 1982)). Further:

> To qualify as a trade secret, there must be evidence that a customer list "was the product of great expense and effort, that it included information that was confidential and not available from public sources, and that it was distilled from larger lists of potential customers into a list of viable customers for [a] unique business."

*Id.* (alteration in original) (quoting *Zodiac Records Inc. v. Choice Env't Servs.*, 112 So. 3d 587, 590 (Fla. 4th DCA 2013)). We held that the list of clients in *Bridge* was confidential because it contained not only the names and addresses of clients, but also personal information about each client. *Id.* at 49. Additionally, the plaintiff showed that it had spent a significant amount of time, money, and effort to develop the list which was kept on a password protected server not available to the public. *Id.*

Comparing this case to *Bridge Financial* and *Digiport*, the Buglio affidavit stated that Patient Depot "undertook the great labor" to cull "the universe of potential suppliers and customers down to a list of viable . . . high volume PPE suppliers and customers." The platform

10

contained customer and supplier order history as well as current pricing information. It was this compilation which allowed Patient Depot to fill orders for customers quickly, giving it an edge over competitor brokers. Buglio attested that the lists of customers and suppliers were winnowed down through their effort and knowledge of the industry to specific suppliers and customers who were vetted for their financial stability and their ability to fill orders in a timely fashion. Buglio pointed out that appellees did not have any background in the medical supply industry and did not know about any of Patient Depot's suppliers when appellees entered into their agreements with Patient Depot. Therefore, appellees did not acquire this information independent of their association with Patient Depot.

Appellees rely on *Mittenzwei* in arguing that Zoho does not deserve trade secret protection. In that case, on appeal from the grant of a temporary injunction, the court found that the record disclosed no evidence to demonstrate that the defendant's employer "produced any customer list" that was a trade secret. 618 So. 2d at 329. The defendant, who had worked for the employer for fifteen years, testified that she had a longstanding relationship with the clients contacted after leaving the employer, and the evidence showed that the defendant relied on the relationships which she had developed, not on any list compiled by her former employer. *Id.* at 329–30. "A former employee 'cannot be precluded from utilizing contacts and expertise gained during [her] former employment, or *even customer lists [she herself] develops.'" *Id.* at 330 (alterations in original) (emphasis supplied) (quoting *Templeton v. Creative Loafing Tampa, Inc.*, 552 So. 2d 288, 290 (Fla. 2d DCA 1989)). Here, however, appellees had not developed the Zoho platform, nor the list of customers and suppliers.

In sum, appellees' evidence in support of their amended motion for summary judgment did not prove that the Zoho platform did not constitute a trade secret and thus confidential information. While the PPE suppliers' identities may have been available in the public domain,[4] the platform

---

[4] Patient Depot also claims that the court made an unsupported inference that the pricing and supplier information was available to any broker. Thus, such information was not confidential. The court relied on Patient Depot's answer to an interrogatory in which Patient Depot stated that it had obtained pricing and commission information from suppliers. The court extrapolated from the answer that any broker could obtain this same information. Appellees contend that the court made a well-reasoned inference from the interrogatory answer, relying on *State Farm Mutual Automobile Insurance Co. v. Figler Family Chiropractic, P.A.*, 189 So. 3d 970 (Fla. 4th DCA 2016), which stated, "[w]hether a summary judgment resolution is appropriate often depends on inferences to be drawn from

included other information such as customer identification, contact information, and order history. All of this was put together to create a knowledge base which allowed Patient Depot to match customers to suppliers and complete orders quickly. None of appellees' proof contradicts this testimony.

Appellees did not attest that they did not take or use information from the Zoho platform's knowledge base. Appellees only attested that they did not disclose the information to third persons. Thus, the trial court erred in entering summary judgment on the breach of contract and misappropriation of trade secrets.

Patient Depot also contends that summary judgment was inappropriate while discovery was outstanding. Patient Depot had sought documents and propounded interrogatories at the commencement of the proceedings, but appellees had failed to answer them, objecting to the requests. The requests were still outstanding at the time of the summary judgment hearing.

At the hearing, the trial court offered Patient Depot the opportunity to file an affidavit in compliance with rule 1.510(d) setting forth the discovery that it still required to rebut appellees' evidence. Patient Depot filed a detailed eight-page affidavit from its attorney who averred that discovery would provide additional evidence in opposition to summary judgment, which included outstanding discovery from appellees; subpoena duces tecum deposition of non-party in possession of appellee Acadia's financial records, including customer and supplier ledgers as well as invoices and purchase orders; and subpoenas to nonparty appellees' PPE customers and suppliers.

---

evidence." *Id.* at 974. This statement is dicta. The rule on summary judgment is that "[i]n determining whether a genuine dispute of material fact exists, the court must view the evidence and *draw all factual inferences therefrom in a light most favorable to the non-moving party* and must resolve any reasonable doubts in that party's favor." *Brevard Cnty. v. Waters Mark Dev. Enters., LC*, 350 So. 3d 395, 398 (Fla. 5th DCA 2022) (emphasis supplied) (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)). The inference that the court drew did not comport with this case law. The favorable inference for Patient Depot from the interrogatory would be that Patient Depot could obtain this information because of its long relationship with the suppliers. Further, even if the court could make the inference that any broker could obtain pricing and commission information, that inference would not lead to summary judgment because the compilation of information in the Zoho platform is the trade secret component, not some of the individual pieces of information.

Patient Depot also filed a motion for rehearing and attached some documents from Acadia which appeared to show Acadia was receiving commissions on sales from Patient Depot suppliers while the agreement was in force, which could support the breach of contract counts for damages due to the use of confidential information during the term of the contract.

In denying Patient Depot's motion for rehearing, the trial court determined that additional discovery would not cure the failures of Patient Depot's evidence because its information was not confidential. However, the information requested may illuminate what information appellees used to develop supplier/customer relationships and sales. The correspondence between appellees and suppliers may also ascertain whether appellees obtained their own information from these suppliers or whether they used Patient Depot's information on pricing, availability of product, and similar information.

In adopting the new summary judgment rule, our supreme court noted the importance of the parties having adequate time for discovery, stating "it is equally important to emphasize that, before being subjected to summary judgment because of the absence of evidence, the nonmovant must have been afforded 'adequate time for discovery.'" *In re Amends. 1.510 II*, 317 So. 3d at 77 (quoting *Celotex*, 477 U.S. at 322); *see also In re Amends. 1.510 I*, 309 So. 3d at 193 (stating "provided there has been an 'adequate time for discovery,' the Supreme Court has held that summary judgment should be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial'" (quoting *Celotex*, 477 U.S. at 322)). We have followed that admonition. "Where the information contained in outstanding discovery could create genuine issues of material fact, summary judgment would not be proper." *Babani v. Broward Auto., Inc.*, 348 So. 3d 608, 609 (Fla. 4th DCA 2022).

Here, outstanding discovery may have provided evidence on the material issues. Appellees had not yet answered or offered any affirmative defenses. Thus, in the context of this case, the trial court erred in granting the summary judgment while discovery was outstanding.

Finally, the trial court also dismissed the claim for tortious interference as being barred by section 542.335, Florida Statutes (2020). Appellees did not assert this defense in an answer, nor did they raise this defense in their motion for summary judgment. Therefore, the trial judge's consideration of section 542.335 amounted to an improper determination

of an issue not before the court. *Chmilarski v. Empire Fire*, 340 So. 3d 563, 566 (Fla. 3d DCA 2022).

**Conclusion**

While the agreements between the parties lacked non-competition or non-solicitation clauses, the agreements did prohibit appellees from using trade secret information obtained from Patient Depot. Because Patient Depot presented the Buglio affidavit supporting its position that the compilation of the information in the Zoho platform constituted a trade secret, we conclude Patient Depot created a genuine dispute as to a material fact and the court erred in granting final summary judgment. Further, we find consideration of summary judgment at this early juncture in the case was premature in light of the outstanding discovery which could have revealed additional genuine issues of material fact. Finally, we also find summary judgment on the tortious interference claim was not before the court. For these reasons, we reverse and remand for further proceedings.

*Reversed and remanded.*

CIKLIN, J., concurs.
FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

I appreciate the trial court's cynicism toward Patient Depot's claims in this case. Appellees had not agreed to a noncompete agreement with Patient Depot. Nor had the parties agreed to a non-solicitation provision. Contact information for potential PPE suppliers was not a state secret and was easily discoverable, as was the universe of prospective purchasers. Simply because Appellees were privy to Patient Depot's purported confidential and protected information and were competing with Patient Depot for business does not present a disputed issue of fact of an actual (rather than speculative) breach of the nondisclosure and confidentiality agreements that the parties did enter. Patient Depot has not argued that Appellees would "inevitably disclose" protected information (and no Florida cases have adopted the inevitable disclosure doctrine, nor have our state courts even acknowledged it).[5]

---

[5] Under the inevitable disclosure doctrine, "[t]he employer need not show proof of a noncompete agreement nor actual or threatened misappropriation." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1326, 1336 (S.D. Fla. 2001).

Nonetheless, an argument *can* be made that information such as the suppliers' reliability (based on their "track record") and the suppliers' resources (to meet customer demand) and customers' resources (to pay for the PPE) meets the statutory and/or contractual terms for protected confidential information.

In a similar case, one of our sister courts found that the former employer's database "qualifies as '[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets.'" *Reliance Wholesale Inc. v. Godfrey*, 51 So. 3d 561, 564 (Fla. 3d DCA 2010) (alteration in original) (quoting § 542.335(1)(b)2., Fla. Stat.). In reaching this conclusion, the court explained how this kind of information could be a legitimate business interest:

> Although the findings of fact reflect that information such as the name and e-mail address of each purchasing agent was readily available on the internet, information as to Reliance's *sale* of each product, such as price and quantity, was not available to the general public [and] that as Reliance did business, it updated its database with this information, this information was utilized for future sales, and [the defendant] knew exactly which products were more profitable.

*Id.*

Arguably, Patient Depot's password-protected information was also "valuable confidential business or professional information." Whether this information could be deemed "trade secrets" under the Florida Uniform Trade Secrets Act ("FUTSA")[6] *or* "confidential information" covered by the parties' contractual agreements has yet to be determined. Thus, I join Judge Warner's comprehensive panel opinion in concluding "that material issues of fact exist with respect to whether the Zoho platform constituted a trade secret and confidential information protected by the confidentiality provision of the agreements."

Upon remand, Patient Depot will have the initial burden to demonstrate that the information which it sought to protect qualifies as a trade secret covered by FUTSA. *See* § 668.002, Fla. Stat. (2020); *RX Sols., Inc. v. Express Pharmacy Servs., Inc.*, 746 So. 2d 475, 478 (Fla. 2d DCA 1999). Alternatively, Patient Depot must establish that the purportedly misappropriated material was protected by the parties' contractual

---

[6] §§ 688.001–.009, Fla. Stat. (2020).

agreements.

If Patient Depot can meet that initial burden, it will next have the burden of establishing "misappropriation" or "threatened misappropriation." *See* § 688.003(1), Fla. Stat. (2020). Section 688.002(2), Florida Statutes (2020), defines "Misappropriation" as:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> 1. Used improper means to acquire knowledge of the trade secret; or
>
> 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>
> a. Derived from or through a person who had utilized improper means to acquire it;
>
> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> 3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

§ 688.002(2), Fla. Stat. (2020).

Patient Depot has not set forth evidence of either actual misappropriation or threatened misappropriation of its "trade secrets." *See* § 688.003(1), Fla. Stat. (2020). Nor has Patient Depot offered any proof beyond speculation that Appellees disclosed or used Patient Depot's trade secrets.[7] *See, e.g.*, *Zupnik v. All Fla. Paper, Inc.*, 997 So. 2d 1234, 1238–

---

[7] Patient Depot's operative complaint asserts "[i]njunctive relief is necessary to protect [Patient Depot] from [Appellees'] **potential** use or disclosure of [Patient

39 (Fla. 3d DCA 2008) (reversing temporary injunction where plaintiff failed to establish any evidence that such information or documents related to its pricing costs were disclosed to or misappropriated by a competitor). However, this does not mean that finding such evidence through further discovery would be impossible.

As I agree with the majority opinion that (1) Patient Depot may be able to establish that the information on the Zoho platform was protected by Chapter 688 and/or by terms of the parties' contract, and (2) an opportunity for further discovery would be appropriate, I concur in the reversal of summary judgment at this point of the litigation.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearin***

---

Depot's] confidential information and trade secrets." (Emphasis added).